WEISS, ADMINISTRATRIX, RESPONDENT, *v.* HAMILTON, APPEL-
LANT.

(No. 2,715.)

(Submitted November 24, 1909. Decided December 2, 1909.)

[105 Pac. 74.]

*Partnership—What Constitutes—Evidence—Insufficiency—Ap-
peal—Review in Equity Cases.*

Equity—Appeal—Findings—Review.
　　1. The rule that the supreme court will on appeal, in equity cases, determine whether the evidence preponderates against the findings of the trial court, is applicable only where there is a controversy as to the facts; hence it has not any application where the facts are admitted by defendant's failure to introduce any testimony.

Partnership—What Constitutes.
　　2. To constitute a partnership, there must not only be such a community of interest as empowers each partner to make contracts, incur liabilities and dispose of its property, but also a community of ownership in the profits.

Same—Sharing of Profits.
　　3. The sharing of profits is not a conclusive test of a partnership.

Same—Evidence—Insufficiency.
　　4. Where the evidence showed that, while mining property had been acquired in the names of two persons, there was no community of title, but each held an undivided individual interest therein; that neither had, or assumed to have, authority to dispose of the interest of the other; and that, when any portion thereof was sold, each received payment as for an individual interest and disposed of the proceeds as he saw fit, the transactions between the parties did not constitute them partners.

Same—Powers of Surviving Partner.

    5. The surviving member of a partnership may expend the firm's funds in protecting its property.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by Matilda Weiss, as administratrix of the estate of R. A. Weiss, deceased, against Julia F. Hamilton. From a judgment for plaintiff, and an order denying her a new trial, defendant appeals. Reversed and remanded, with directions to enter judgment for defendant.

*Messrs. Mattison, Cavanaugh & Poore,* for Appellant, submitted a brief; *Mr. J. A. Poore* argued the cause orally.

To determine whether the relations between parties constitute a partnership, their intention in forming it governs. When the facts are given, this is a question of law, no matter what the parties call the contract. Their relation is controlled by the agreement. (Bates on Partnership, sec. 17.) The intention of the parties will be regarded from the whole contract, regardless of special expressions. (*Beecher* v. *Bush,* 45 Mich. 188, 40 Am. Rep. 465, 7 N. W. 785; *Manhattan Brass Co.* v. *Sears,* 45 N. Y. 797, 6 Am. Rep. 177; *Rosenfield* v. *Haigh,* 53 Wis. 260, 40 Am. Rep. 770, 10 N. W. 378.) The fact that one has the right to bind the other must be generally intended. (*Beecher* v. *Bush, supra; Colwell* v. *Britton,* 59 Mich. 350, 26 N. W. 538; *Parchen* v. *Anderson,* 5 Mont. 438, 51 Am. Rep. 65, 5 Pac. 588.) To constitute a partnership there must be a community of profits; that is, if land was acquired, it would have to be held in community instead of cotenancy; it would have to be held jointly as long as the relationship continued. (*Parker* v. *Canfield,* 37 Conn. 250, 9 Am. Rep. 317.) An agreement to share the gross receipts does not constitute a partnership, where there is no common stock or joint capital. (Bates on Partnership, sec. 58.) In this case, the property was never bought for the business, but was simply bought on speculation, as an investment. (*Lyden* v. *Lawrence,* 2 N. R.

283 (Exch.).) A joint purchase, with the intention of dividing the property or making separate sales, does not constitute a partnership, for no joint profits are designed to be made. An essential element of all partnership is the intention of the parties to have a community of interest in the profits. (*Parchen* v. *Anderson,* 5 Mont. 438, 51 Am. Rep. 65, 5 Pac. 588.) Where several parties raise a fund and give it to one to buy property for them, they to own it in certain proportions, and the subject of selling is left to future arrangements, they are tenants in common, and not partners. (*Baldwin* v. *Burrows,* 47 N. Y. 199.) The law of partnership is the law of interchangeable principal and agent—each must represent the whole, and any part. (*Parchen* v. *Anderson, supra; Harvey* v. *Childs,* 28 Ohio St. 321, 22 Am. Rep. 387.) There must be such a community of interest as empowers each party to make contracts, incur liability, manage the whole business, and dispose of the whole property—a right, which upon the death of the other passes to the survivor and not to the representatives of the deceased. (*Ashbey* v. *Shaw,* 82 Mo. 76; *McDonald* v. *Matney,* 82 Mo. 358.)

Neither Weiss nor Hamilton had any right to or interest in the common proceeds of the sale of land; each received the purchase price for his own interest, and it was always kept separate and distinct. (*Baldwin & Co.* v. *Patrick,* 39 Colo. 347, 91 Pac. 828; *Beckwith* v. *Talbot,* 2 Colo. 639; *Lee* v. *Cravens,* 9 Colo. App. 272, 48 Pac. 159.) "Where the firm has entered into a contract, the survivor has power to carry it out." (*Page* v. *Wolcott,* 15 Gray (Mass.), 536; *Rust* v. *Chisholm,* 57 Md. 276; *Denver* v. *Roane,* 99 U. S. 355, 25 L. Ed. 476; *Little* v. *Caldwell,* 101 Cal. 553, 40 Am. St. Rep. 89, 36 Pac. 107; *King* v. *Leighton,* 100 N. Y. 386, 3 N. E. 594; *Frey* v. *Eisenhardt,* 116 Mich. 160, 74 N. W. 501.)

The court, it is true, found that the money in the bank was firm assets, but the mere fact that this money was assets of the firm would not warrant the court in dividing it between the partners without finding first that it was a clear balance, net

profits. (*Noonan* v. *Nunan*, 76 Cal. 44, 18 Pac. 98; *Filley* v. *Phelps*, 18 Conn. 294; *Hutchinson* v. *Dubois*, 45 Mich. 143, 7 N. W. 714.)

For Respondent there was a brief by *Messrs. Binnard & Rodger*, and oral argument by *Mr. Morris Binnard*.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This is a suit for an accounting. The plaintiff recovered judgment, and the defendant appealed from the judgment and from an order denying her a new trial.

The complaint alleges: That the plaintiff is administratrix of the estate of R. A. Weiss, deceased; that on or about January 1, 1900, R. A. Weiss and this defendant entered into a copartnership, under the firm name of Weiss & Hamilton; that such copartnership continued until the death of Weiss, which occurred on January 21, 1906; that during the continuance of such copartnership valuable properties were acquired and were owned by the partnership at the time of the death of Weiss; that the defendant has the exclusive possession of such properties and has refused to account to the plaintiff. The answer admits that Weiss died on January 21, 1906, and that the plaintiff is the administratrix of his estate. It denies every other allegation of the complaint.

Upon the trial the plaintiff called the assistant cashier of the bank of W. A. Clark & Bro., who testified: That in 1903 an account was opened with the bank in the name of "Weiss & Hamilton"; that the account was continued until January 18, 1906, when the sum of $2,545 was withdrawn, which balanced the account. A. F. Greene testified for plaintiff that he purchased from the defendant a one-fourth of her undivided one-half interest in certain mining claims located south of Butte, for which he paid her $1,000. W. I. Lippincott testified: That he was secretary of the Butte Crude Petroleum Company; that the records of the company show that originally certain shares

of stock had been issued to Weiss, and certain other shares had been issued to Mrs. Hamilton; that, of the shares originally issued to Weiss, 4,500 had thereafter been canceled, and a like number issued to Mrs. Hamilton at the same time. J. H. McDonald testified that at one time in a conversation Mrs. Hamilton had spoken of the interest of herself and Weiss in the mining claims south of Butte as a partnership interest.

The plaintiff herself testified that the defendant had not accounted. In support of the allegations of her complaint that a copartnership existed between Weiss and the defendant, and that such copartnership owned property which was in the possession of the defendant, it was apparently deemed necessary by plaintiff to make the defendant a witness in her behalf, and this was done. Mrs. Hamilton testified at some length with reference to the business relations which existed between herself and Weiss, from the time they first met in Spokane, in 1897, to the date of the death of Weiss, in 1906. It appears from her testimony that in 1897 she had $10,000 in cash, and that at that time Weiss was without any funds whatever. Some time later, at the suggestion of Weiss, Mrs. Hamilton furnished the necessary funds, and the two located certain oil and coal lands in Wyoming; every claim being located in the names of R. A. Weiss and Julia F. Hamilton. Later, under a similar arrangement, some sixty or more mining claims were located south of Butte, and each mining claim was likewise located in the names of R. A. Weiss and Julia F. Hamilton, locators. Mrs. Hamilton furnished all the funds necessary to make the locations and pay for the work done upon the claims. It appears from her testimony that in all these transactions it was understood between them that Mrs. Hamilton was to furnish all the money, Weiss to do the work of locating the claims, and each was to share equally in the profits, if any were realized. The oil claims were transferred to two corporations, the Butte Crude Petroleum Company and the Monumental Oil Company. Neither Weiss nor Mrs. Hamilton ever assumed to transfer joint or common property; but each apparently transferred an undi-

vided individual interest. For her interest transferred to the
Butte Company, Mrs. Hamilton received 60,000 shares of the
capital stock of that company, and it appears that Weiss re-
ceived, for his interest transferred to the same concern, 125,000
shares of the capital stock of the company. For her interest
in the oil claims transferred to the Monumental Company, Mrs.
Hamilton received $3,000 in cash, while Weiss received certain
shares of the capital stock of that company for his interest.
Later on Weiss became dissatisfied and exchanged his stock in
the Monumental Company to Mrs. Hamilton for her interest
in the coal land claims. It appears that these coal land claims
were subsequently forfeited. Some of the mining claims which
had been located south of Butte were sold to the Cleveland-
Montana Company, a corporation. For her interest in the
claims so sold, Mrs. Hamilton received $7,000 in cash, while
Weiss received 300,000 shares of the capital stock of the Cleve-
land Company for his interest conveyed to it. Mrs. Hamilton
further testified that she understood from Weiss that he sold
some of the stocks owned by him, but she did not know to whom
or for what price they were sold. It also appears from her
testimony that she and Weiss never had any common funds
in which both were interested; that when property was disposed
of each received a distributive share of the selling price, in
money or stock; that when stock was taken by either it was con-
trolled and disposed of by the individual owner without con-
sulting the other. It also appears that the money deposited in
the Clark bank in the names of Weiss & Hamilton was the in-
dividual money of Mrs. Hamilton, and that it was deposited
in those names at the suggestion of Weiss himself. Mrs. Hamil-
ton testifies positively that the remaining $2,545, which she
withdrew from the bank on January 18, 1906, and which with-
drawal balanced the account, was her individual money, in
which Weiss did not have any interest whatever. During the
year 1906 it was necessary to do the annual representation work
on the mining claims then held by Mrs. Hamilton and the es-
tate of Weiss, and, since the estate did not then have any funds,

Mrs. Hamilton expended the $2,545, which she had withdrawn from the bank, and the $1,000 which she had received from the witness Greene, in having such representation work done. She testifies that during that year they were offered $24,000 for these mining claims; but, by reason of plaintiff's refusal to join in a sale, they were not able to dispose of them. During 1907 the representation work was not done for lack of funds, and the claims were forfeited.

The foregoing is, in substance, the whole of the material evidence introduced in behalf of the plaintiff. At the conclusion of plaintiff's case, the defendant interposed a motion for judgment in her favor. This motion was denied, and the defendant rested without introducing any evidence. The trial court found: (1) That Weiss and Mrs. Hamilton were copartners; (2) that the coal, oil, and mining claims were copartnership property; (4) that on January 18, 1906, there was on deposit in the Clark bank, to the credit of such copartnership, $2,545; (5) that Mrs. Hamilton withdrew this money and appropriated it to her own use; (6) that this money was the principal asset of the copartnership. From these and other findings, not material here, the court concluded that the plaintiff was entitled to a judgment against the defendant for $1,272.50, being one-half of the amount withdrawn by the defendant from the Clark bank on January 18, 1906.

The rule invoked by counsel for respondent that, on appeal in an equity case, this court will determine whether the evidence preponderates against the findings of the trial court, is applicable only in a case where there is a controversy as to the facts. It cannot have any application in a case of this character, where there is not any such controversy, for, the facts being admitted, there are for solution only bare legal questions arising from those facts. We are called upon, as was the trial court, to say whether the undisputed evidence justifies the findings. The principal question for determination is whether there was in fact a partnership.

Section 5466, Revised Codes, provides: "Partnership is the association of two or more persons, for the purpose of carrying on business together, and dividing its profits between them." But that the sharing of profits is not a conclusive test of a partnership is now almost universally recognized. It was declared by this court in *Parchen* v. *Anderson,* 5 Mont. 438, 51 Am. Rep. 65, 5 Pac. 588, and reaffirmed in *Beasley* v. *Berry,* 33 Mont. 477, 84 Pac. 791. It is now too well settled to be open to discussion. Sections 5469 and 5482, Revised Codes, provide:

"Sec. 5469. The interest of each member of a partnership extends to every portion of its property."

"Sec. 5482. Every general partner is agent for the partnership in the transaction of its business, and has authority to do whatever is necessary to carry on such business in the ordinary manner, and for this purpose may bind his copartners by an agreement in writing."

These statutes are merely declaratory of the rule recognized everywhere, that, to constitute a partnership, there must be such a community of interest as empowers each party to make contracts, incur liabilities, and dispose of the property. Other sections of the Code place some restrictions upon the power of an individual partner. It is also essential to a partnership that there be community of ownership in the profits. In George on Partnership, page 50, the author says: "The ultimate and conclusive test of a partnership is the co-ownership of the profits." And this text is supported by the authorities generally. In 30 Cyc. 371, the same rule is stated as follows: "Not only must a common business exist, as distinguished from a pooling of several individual interests in an enterprise, but the sharing of profits by the associated persons must be in their capacity as coprincipals in that common business, or a *prima facie* case of partnership is not made out." The law of partnership is the law of interchangeable principal and agent. Each partner represents the whole and every part of the partnership. (*Parchen* v. *Anderson,* above.)

The transactions between Weiss and Mrs. Hamilton did not constitute them copartners. Some of the essential elements of

a partnership were lacking. They did not have any community of title to the property acquired. The fact that the property was taken in the names of both is not of any particular significance. The same thing would have been done had they been merely tenants in common. The idea of community of interest is not reconcilable with the fact that each held an undivided individual interest. There was also lacking the very essential element of community of ownership in the profits. When property was sold, each received payment as for·an individual interest, and each disposed of his interest in the proceeds of the sale as he saw fit. Section 5468, Revised Codes, provides: "The property of a partnership consists of all that is contributed to the common stock at the formation of the partnership, and all that is subsequently acquired thereby." If the oil and mineral lands belonged to the partnership, then the proceeds of any sales of either would also have been partnership property; but that these parties never intended anything of that kind is manifest from their conduct, in each dealing with his interest in the proceeds of the sales made as he saw fit, without consulting the other. There was also lacking the element of interchangeable principal and agent. The evidence wholly fails to show that either Weiss or Mrs. Hamilton had, or ever assumed to have, any authority to dispose of the interest of the other in any of the property standing in the names of both. The fact that Mrs. Hamilton once referred to the interest of herself and Weiss in the mining claims as a partnership interest is not controlling. There is not any question of ostensible partnership involved here. That Weiss and Mrs. Hamilton located the coal, oil, and mining claims in the names of both, that they opened an account in the bank in the common name, that they agreed to share the profits of their undertakings, and that Mrs. Hamilton spoke of their mining interest as a partnership interest, are all facts pertinent as tending to show that a partnership existed; but they fall far short of being sufficient to establish a partnership.

We have searched the record in vain for any evidence showing, or tending to show, the particular source from which

the $2,545, which was withdrawn from the bank on January 18th by Mrs. Hamilton, was obtained; but Mrs. Hamilton testifies positively that the money was her individual property, and this evidence is binding upon the plaintiff, whose witness Mrs. Hamilton was. The court found that Mrs. Hamilton appropriated this money to her own use, while the evidence shows that she expended it in doing the necessary representation work on the mining claims then belonging to her and the Weiss estate. The court's finding was doubtless made upon the theory that, if the money was partnership property, Mrs. Hamilton could not rightfully expend it after the death of Weiss. If such was the theory of the court, it was erroneous. Under our Code, the surviving partner has the right to continue in possession of the partnership property, and to settle the partnership business. (Rev. Codes, sec. 7607.) The authority to settle up the business contemplates the completion of transactions begun before the death of the one partner. (George on Partnership, 409.) The surviving partner not only has the authority, but it is his duty, to expend the partnership means in protecting partnership property. (2 Bates on Partnership, secs. 728, 769.) At the time this representation work was done, the mining claims were valuable, and failure to have the work done would have rendered the claims liable to forfeiture. It was necessary to protect the property that the work be done, and the surviving partner, if a partnership had existed, could have properly expended partnership funds in doing such work.

Our conclusion is that the evidence does not support the findings above, but, on the contrary, shows that the plaintiff is not entitled to recover at all. The judgment and order are reversed, and the cause is remanded to the district court, with directions to vacate the findings and judgment heretofore made, and to enter judgment in favor of the defendant for her costs.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.