FLEMING,   RESPONDENT,   *v.*  CONSOLIDATED   MOTOR
SALES CO. ET AL., APPELLANTS.

(No. 5,756.)

(Submitted September 15, 1925.  Decided October 2, 1925.)

[240 Pac. 376.]

*Cancellation of Instruments — Incompetents — When Contract*
*Void — When   Voidable — Complaint — Evidence — Insuffi-*
*ciency—Pleading and  Practice—Reply—Promissory Notes—*
*Chattel Mortgages.*

Pleading and Practice—Causes of Action—Improper Joinder—Remedy.
1. Improper joinder of causes of action in one count cannot
be reached by general demurrer; motion that the causes be sepa-
rately stated and numbered being the proper remedy, and in the
absence of such motion the defect is waived.
Incompetency—Contracts—When Void—When Voidable.
2. A contract made with a person entirely without understand-
ing is void *ab initio* (sec. 5683, Rev. Codes 1921), while one made
with a person of unsound mind "but not entirely without under-
standing" (sec. 5684) is voidable only at the suit of one seeking
to rescind on one of the grounds mentioned in the Chapter of the
Codes relating to rescission.
Same—Cancellation of Instruments—Complaint—Sufficiency.
3. In an action by an incompetent by his guardian *ad litem*
for the cancellation of a contract of sale of an automobile, com-
plaint alleging, in substance, that plaintiff, at the time of the
transaction, was entirely without understanding and without
mental capacity to understand business transactions of the nature
of that involved, and specifically charging that he did not under-
stand, and was without mental capacity to understand, the trans-
action in question, stated a cause of action under section 5683,
Revised Codes of 1921. (See par. 2, *supra.*)
Same—Evidence—Insufficiency.
4. Evidence *held* insufficient to sustain a finding that plaintiff,
an alleged incompetent, was entirely without understanding at the
time he executed a contract sought to be canceled under the pro-
vision of section 5683, Revised Codes of 1921.
Same—"Entirely Without Understanding"—Proof Required.
5. Where a contract is sought to be canceled on the ground
of incompetency under section 5683 on the ground that the in-
competent was "entirely without understanding" at. the time he

<hr />

2.  Contracts of insane persons and how and when voidable, see
notes in 5 Am. Dec. 361; 21 Am. Rep. 29; 71 Am. St. Rep. 425.
Capacity to make contract as affected by mental condition, see note
in 3 L. R. A. (n. s.) 174.
5.  See 14 R. C. L. 583.

made it, the proof need not show an entire lack of understanding on any subject, *i. e.*, that his mind was an absolute void, it being sufficient to show such a degree of mental deficiency as to render him incapable of understanding a transaction of the nature involved in the action.

Same—Proof of "Unsound Mind" Insufficient to Establish Entire Want of Understanding.

6. Testimony of lay witnesses that plaintiff was of unsound mind is not sufficient to establish that he was "entirely without understanding" within the meaning of section 5683, *supra*, making such a contract absolutely void.

Same—Findings—Evidence—Insufficiency.

7. Where in an equity case defendant did not introduce any testimony on the determinative issue and the finding of the court in favor of plaintiff is attacked on the ground that it was not supported by the evidence, the supreme court must determine from the undisputed showing of plaintiff whether the finding was justified, and if that showing itself disproves the fact contended for, the judgment will be reversed.

Same—Cancellation of Instruments—Entire Lack of Understanding must be Shown.

8. No degree of mental weakness short of an entire lack of understanding will vitiate a contract, in the absence of fraud or imposition, the law not presuming to make a distinction between much and little intellect.

Pleading and Practice—Office of Reply—Cannot Aid Complaint.

9. The office of a reply is to join issue on or avoid new matter alleged in the answer; it cannot aid the complaint by supplying an omission broadening its scope or adding a new ground of relief; hence where in an action to cancel a contract failure of consideration was pleaded for the first time in the reply, a finding that there was no consideration for the contract was error.

Sales—Promissory Notes—Holder in Due Course—Existence of Mortgage—When Insufficient to Prevent Passing of Title—Consideration.

10. Where at the time an automobile dealer gave a mortgage on a car to a bank with the understanding that the mortgagor should sell it and that the bank would release the mortgage on delivery to it of the consideration received, and the car was sold and the notes given in payment were delivered to the bank, the existence of the mortgage did not prevent passing of title, nor was there lack of consideration, and the bank was a holder in due course.

Promissory Notes—When Action Premature.

11. In the absence of a provision in a contract of sale of an automobile rendering the entire consideration evidenced by a series of notes payable on failure to pay any one of them, action on one not due is premature.

Appeal and Error, 4 **C. J.**, sec. 2835, p. 857, n. 89.
Bills and Notes, 8 **C. J.**, sec. 718, p. 510, n. 80.
Cancellation of Instruments, 9 **C. J.**, sec. 160, p. 1237, n. 22.
Chattel Mortgages, 11 **C. J.**, sec. 339, p. 624, n. 35.
Contracts, 13 **C. J.**, sec. 44, p. 262, n. 65; sec. 978, p. 778, n. **17.**
Insane Persons, 32 **C. J.**, sec. 501, p. 731, n. 71, 72.
Pleading, 31 **Cyc.**, p. 261, n. 71; p. 635, n. 89; p. 732, n. 70.
Recoupment, Set-off and Counterclaim, 34 **Cyc.**, p. 673, n. **93.**

*Appeal from District Court, Powell County; George B. Winston, Judge.*

ACTION by William Fleming, by W. L. Fleming, his guardian *ad litem,* against the Consolidated Motor Sales Company, the First National Bank of Missoula and others, wherein D. C. Smith intervened. Judgment for plaintiff, and second named defendant and intervener appeal. Reversed and remanded, with directions.

*Mr. Harry H. Parsons,* for Appellant, submitted a brief and argued the cause orally.

The complaint does not state a cause of action. In the first place, there is no allegation that Fleming was entirely without understanding, and where fraud is not alleged and proven, there must be such an allegation. (*Vice* v. *Morris,* 58 Cal. App. 442, 208 Pac. 1020.) *Kiley* v. *Danahey,* 61 Mont. 608, 200 Pac. 1110, and *Murphy* v. *Nett,* 47 Mont. 38, 130 Pac. 451, have no application, for the reason that in both cases fraud was alleged and proven. In one paragraph of the complaint plaintiff says that he is simply incompetent to transact ordinary business, while in another he says that his acts are void for unsoundness of mind. There is no allegation that he is lacking capacity to understand the particular transaction involved in this case; and this is necessary. (*Jacks* v. *Estee,* 139 Cal. 507, 73 Pac. 247; *Kiley* v. *Danahey, supra.*)

There was no allegation that the plaintiff ever had any illusions, delusions or hallucinations. The plaintiff contented himself with alleging that he "is" an "imbecile." (a) Now, an "imbecile" is not necessarily a person of unsound mind so as to be incapable of understanding the transaction. An imbecile is one destitute of strength, either of the body or mind, weak, feeble, impotent, decrepit. (*Campbell* v. *Campbell,* 130 Ill. 466, 6 L. R. A. 167, 22 N. E. 620.) In *Calderon* v. *Martin,* 50 La. Ann. 1153, 23 South. 909, it is said that

imbeciles are persons whose mental powers and resources are limited though they may still retain their mental faculties, and that he may make use of his senses and have ideas and judgment and even have the power of making deals in business, calculations, *etc.* (b) An incompetent person may mean on account of age, lack of experience or lack of reliability, or it may mean mental incapacity. There is no special incapacity pleaded in this case. (4 Words & Phrases, 3507.)

Of necessity, plaintiff must place himself squarely upon the proposition: That at the time the notes were executed and the sale made, the plaintiff was totally without understanding. In other words, he puts himself squarely upon section 5683 and not upon section 5684, Revised Codes of 1921. Respondent in his complaint confused these two sections of the statute. In one breath he spoke of rescinding the contract and in another breath he spoke of the contract as being an absolute nullity from its inception. A null and void thing cannot be rescinded. The law in the case seems to be well settled between a void transaction and a voidable one. If the plaintiff was entirely without understanding as to the particular purchase, then the transaction is void and the action is not maintainable because he has a perfect defense in an action at law, but if the action is merely voidable, then in that case he must rescind, and in order to rescind there must be some grounds for rescission like fraud, duress, mistake; and in this case the plaintiff cannot rescind because he neither alleges fraud, accident, mistake nor any other ground to justify a rescission, and he openly repudiates any such object or purpose upon his part. (*Kiley* v. *Danahey, supra.*) Under these circumstances, the law as announced in the following cases is controlling: *Markus* v. *Lester,* 59 Cal. App. 564, 211 Pac. 240, 241; *Norris* v. *Dagley,* 64 Okl. 171, 166 Pac. 718; *Continental Gin Co.* v. *De Bord,* 49 Okl. 32, 150 Pac. 892; *Westerland* v. *Bank,* 38 N. D. 24, 7 A. L. R.

562, 164 N. W. 323; *Sprinkle* v. *Wellborn,* 140 N. C. 163, 111 Am. St. Rep. 827, 3 L. R. A. (n. s.) 174, 52 S. E. 666; *Charley* v. *Norvell,* 97 Okl. 114, 221 Pac. 255.

*Mr. S. P. Wilson* and *Mr. H. W. Rodgers,* for Respondent, submitted a brief; *Mr. Rodgers* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This action was brought by plaintiff, William Fleming, through his guardian *ad litem,* for that purpose duly appointed, for the cancellation of a certain executed contract of sale of an automobile and the return to the plaintiff of the consideration given therefor.

The complaint alleges that, on September 10, 1923, defendants, Jerry Miller and Cal Whitney, effected a pretended sale to plaintiff of a Haynes sport model automobile; that, at the time, said William Fleming was an incompetent person without mental capacity to understand business transactions, and also that at said time plaintiff was an insane person and was known to said Miller and Whitney to be insane, and that they wrongfully and fraudulently took advantage of said condition and thereby procured the said William Fleming to indorse a certain certificate of deposit and to execute certain notes, all of which were delivered by said Fleming to Miller and Whitney in payment for the automobile; and that by reason of said facts the pretended transaction was and is void.

The defendants, Consolidated Motor Sales Company, Jerry Miller and Cal Whitney, did not appear in the action, and the record does not disclose whether any one of them was served with process herein.

The First National Bank of Missoula, hereinafter referred to as the "bank," interposed a general demurrer to the complaint, which was by the court overruled. Thereupon the bank by answer joined issue on the allegations of the com-

plaint, alleged that the defendants Miller and Whitney were insolvent and had left the state, and, as a further answer and counterclaim, set up its transaction with Miller and Smith, hereinafter set out, including a mortgage given by Miller to the bank in which the automobile in question was described with the recordation thereof long prior to the sale to Fleming. It then alleged that plaintiff was a man past majority and had theretofore engaged in business transactions as other men do; that the bank took the certificate of deposit and notes for full value, before maturity and without notice of any infirmity therein, and was a holder thereof in due course. It prays for judgment against plaintiff on the notes held by it, and for the release to it and the intervener, Smith, of the certificate of deposit, and for judgment against defendant Miller on his original note, and that the mortgage be foreclosed on the automobile.

Smith, by complaint in intervention, set up practically the same facts.

The plaintiff, by reply to the bank's answer, and by answer to the complaint in intervention, joined issue as to the new matter contained in those pleadings, and for the first time alleged failure of consideration by reason of the existence of the mortgage and consequent failure of title in the seller.

Trial was had to the court without a jury. The court found that all of the allegations of the complaint and reply were true; that Fleming was "an incompetent person and without mental capacity to understand business transactions, and an insane person and entirely without understanding of the nature and character of the pretended sale"; that Miller and Whitney took advantage of his mental incapacity and fraudulently and wrongfully procured his indorsement of the certificate of deposit and execution of the notes and fraudulently procured possession of the same, and that the instruments are nullities.

The court then found the transactions between Miller, Smith and the bank to be as alleged in the answer of the bank, and that, by reason thereof, Fleming acquired no title to the automobile; that the bank had knowledge of these transactions and was, therefore, not a holder in due course; that Smith had no interest in the subject matter of this action other than as an accommodation maker on Miller's note, and that the bank was entitled to judgment against Miller and Smith on the original note, and for the foreclosure of the mortgage on the automobile.

Objections to the findings were filed and overruled, and judgment was entered directing the return of the certificate of deposit and the notes to Fleming; the return of the car to defendants; judgment· was also rendered against Smith and Miller in favor of the bank, with a decree of foreclosure of the mortgage and order of sale of the automobile.

From this judgment and decree of foreclosure, the defendants, First National Bank of Missoula and D. C. Smith, have jointly and severally appealed, but, as their interests are identical, have united their appeals. They make nine assignments of error, which, however, present but four questions for determination: (1) Does the complaint herein state facts sufficient to constitute a cause of action? (2) Is the evidence sufficient to support the finding that Fleming was, at the time of the transaction, entirely without understanding? (3) Was the indorsement of the certificate of deposit and the execution of the notes without consideration? (4) Was the First National Bank of Missoula a holder in due course?

(1) It is contended by counsel that, by reason of the fact that the pleader has improperly united in one count, a cause of action for the avoidance of the contract on the ground that plaintiff was entirely without understanding and a cause of action for its rescission, the complaint is fatally defective.

(a) While the wording of the complaint indicates a failure [1, 2] on the part of the pleader to comprehend the distinction between such causes of action, and the complaint may,

in a measure, be open to such criticism, the only challenge thereto was by general demurrer and by objection to the introduction of testimony on the ground that the complaint did not state facts sufficient to constitute a cause of action, which has the effect of a general demurrer. It is well settled in this jurisdiction that such a defect in the complaint cannot be reached by general demurrer, and is waived by failure to move that the causes be separately stated and numbered. (*Shipler* v. *Potomac Copper Co.,* 69 Mont. 86, 220 Pac. 1097; *Jorud* v. *Woodside,* 63 Mont. 23, 206 Pac. 344; *Roberts* v. *Sinnott,* 55 Mont. 369, 177 Pac. 252; *Marcellus* v. *Wright,* 51 Mont. 559, 154 Pac. 714.)

The only question for determination then is: Does the complaint state facts sufficient to constitute a cause of action on any theory, disregarding matters of form and all allegations not appropriate to the purpose sought to be attained? (*Wheeler & Motter Merc. Co.* v. *Moon,* 49 Mont. 307, 141 Pac. 665; *Raymond* v. *Blancgrass,* 36 Mont. 449, 15 L. R. A. (n. s.) 976, 93 Pac. 648.)

The distinction between an action for the cancellation of a void contract and the rescission of a voidable contract, under circumstances such as are set out in the complaint, is expressed in the following provisions of our Code: Section 5683: "A person entirely without understanding has no power to make a contract of any kind." Here the contract is void *ab initio.*

Section 5684: "A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to rescission, as provided in the Chapter on rescission of this Code." Such a contract is not void, but voidable only when the person seeking to rescind pleads and establishes some one of the grounds for rescission declared in the Chapter referred to. This subject will be more fully discussed later.

While the complaint attempts to allege fraud and knowledge of plaintiff's mental condition on the part of the other parties to the contract, these allegations are made in connection with the allegation that plaintiff was, and is, entirely without understanding. There is no allegation to the effect that he was, or is, of unsound mind, but not entirely without understanding, or that his incompetency had not theretofore been judicially determined, nor is a rescission pleaded or sought in the action. It is doubted, therefore, that the complaint states facts sufficient to constitute a cause of action under the provisions of section 5684.

However, paragraph 6 of the complaint reads as follows:
[3] "That the said William Fleming was then, and is now, an incompetent person and without mental capacity to understand business transactions, and plaintiff alleges upon information and belief that said William Fleming was then, at the time of the transaction above referred to and more specifically hereinafter set out, an insane person and was known to be so at such time by the defendants, Jerry Miller and Cal Whitney, and that the said William Fleming was entirely without understanding of the nature or character of the pretended transaction above referred to and hereinafter more particularly alleged, and could not and did not understand, and did not have the mental capacity to understand, such pretended transaction, and was entirely without understanding of the same and that said William Fleming did not have mental capacity to understand business transactions or to attend to business, or to participate in business transactions. That during his entire life, William Fleming was, and ever since has been, and now is, an imbecile."

Eliminating those portions of the foregoing paragraph which attempt to allege insanity in some form, other than an entire lack of understanding, and knowledge of such condition on the part of the other parties to the transaction, as superfluous, this paragraph alleges in effect, and in fact, that

the said William Fleming was, at the time of the transaction, entirely without understanding and without mental capacity to understand business transactions of the nature and character involved in the action generally, and specifically alleges that the plaintiff did not understand, and was without mental capacity to understand, the particular transaction which is the subject matter of this action.

Our section 5683 is an exact copy of section 38 of the Civil Code of California. In the case of *Jacks* v. *Estee,* 139 Cal. 507, 73 Pac. 247, the supreme court of that state had under consideration a complaint in all essential particulars identical with the complaint herein. After analyzing the section, and their section corresponding to our section 5684, the court said: "We do not doubt, therefore, the sufficiency of the cross-complaint, which alleges the general incapacity of the intestate to understand business transactions, to bring the case within the provisions of section 38."

(b) But counsel contends that "if the transaction is void, plaintiff has pleaded himself out of court and has no right to come into a court of equity, because he can defend against a recovery on these notes in an action at law"—citing *Johnson* v. *County of Lincoln,* 50 Mont. 253, 147 Pac. 471. This was an action in which plaintiff sought to enjoin a tax sale of lands, in which plaintiff had but a preferential right of entry, and did not involve the validity of any written instrument. The court held that the threatened sale could not cast a cloud upon the title as to plaintiff, and that, therefore, the complaint did not state a cause of action. We do not consider the case in point here.

Actions of this nature are governed by a special statute, which reads as follows: "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." (Rev. Codes 1921, sec. 8733.) The next succeeding section

(8734) provides that an instrument invalid on its face is deemed incapable of causing injury. The instruments in question, and particularly the indorsement of the certificate of deposit, outstanding, raise a reasonable apprehension that "left outstanding it may cause serious injury" to the plaintiff.

The complaint therefore states a cause of action on section 5683, above.

(2) The determination of the second question depends [4] entirely upon whether there is sufficient showing that, at the time of the transaction complained of, William Fleming was "a person entirely without understanding," in the sense in which that phrase is construed by the courts, and, before discussing the legal phases of this question, we deem it advisable to set out the substance of the evidence on which the trial court based its findings.

The uncontroverted facts are: That defendant Jerry Miller was, in the year 1923, an automobile salesman, operating under the fictitious name of "Consolidated Motor Sales Company"; that he was an old acquaintance of D. C. Smith, a druggist and vice-president of the First National Bank of Missoula, though not actively connected with the management of that institution. That on May 24, 1923, Miller received a shipment of four Haynes cars at Missoula, but was without funds to pay therefor; that he induced Smith to sign a note with him to the bank for the sum of $6,471.38, the amount necessary to secure the possession of the cars. This note the bank accepted, looking only to the security afforded by Smith's signature, but, for the protection of Smith, took from Miller a chattel mortgage on the cars with the agreement and understanding that Miller should proceed to sell the cars, and, as the proceeds from the sales were turned in, to credit the amounts on the note and on demand release the cars from the operation of the mortgage. Prior to September 10, 1923, three of the cars were disposed of in some manner and at least a portion of the proceeds was turned in and

credited on the note by the bank, leaving a balance due of more than $4,000.

On September 10, 1923, Miller, accompanied by Whitney, who was somewhat acquainted in the neighborhood, went to plaintiff's home in Powell county. Plaintiff was at that time a man of mature years; had $1,400 on time deposit in the banking establishment of Blair & Co., defendant, and owned 158 acres of meadow-land, of the value of approximately $25 per acre. A sale was there made and the car, the value of which was not definitely fixed, but which was probably in excess of $3,000, was delivered by Miller to plaintiff, who in turn indorsed his certificate of deposit and executed four promissory notes—one for $95.40, payable November 1, 1923; one for $300, payable December 10, 1923; one for $350, payable March 10, 1924, and one for $1,000, payable September 10, 1924. These instruments were delivered to Miller, and he in turn indorsed them, with the exception of the first note mentioned, over to the defendant bank. Immediately upon learning of the transaction, W. L. Fleming, brother of plaintiff, procured his appointment as guardian *ad litem* and commenced this action. Miller and Whitney were insolvent and left the state before trial.

Coming then to the evidence as to the mental incapacity of plaintiff, we find that W. L. Fleming testified that he was a brother of William Fleming, and was thirty-nine years of age; that William Fleming was fifty-four years old; had never married, was "more like a child than a man"; that "he never done any business nor anything," and "if he had a conversation or anything to make, he would rather talk to the children than to the men"; that "he couldn't go out and do any kind of work without someone to look over him, and show him how to do it"; that he was subject to fits of anger, and would laugh without cause; that "he never carried on a conversation with me about crops or anything of that kind—never could"; that "he would not talk at table other than to ask to have passed

what he wanted." Again this witness stated: "He had no knowledge towards business transactions or the value of money, \* \* \* anyone could talk him into selling him anything they had"; that William Fleming lived with him, but would often leave home for indefinite periods, working for neighbors without compensation. Asked the question whether William Fleming was, at the time of the transaction complained of, "of sound or unsound mind," the witness answered, "I don't think he was of sound mind." "Q. And would it be your opinion that he was of unsound mind? A. Yes."

On cross-examination the witness disclosed the fact that William Fleming had acquired 158 acres of meadow-land under the Homestead Act and had a house and some furniture thereon; that for a number of years, under an agreement with William Fleming, the witness had cut the hay on this land, using it himself or selling it, and in payment therefor had paid the taxes on the land, kept up the fences and furnished William Fleming with his board and lodging; that William always handled his own money; that he had inherited approximately $6,000 from his mother in 1912, and still had the $1,400 remaining on deposit; that he had in recent years purchased two second-hand automobiles which he drove when they were in condition to drive; that witness had never sought to have William judicially declared incompetent, giving as his reason that there were older children who might more properly have made the application.

F. J. Conn testified that he had known William Fleming twenty-six years; that he had never had any conversation with William other than to "pass the time of day or something like that"; that "his conversation wouldn't be connected," and that he would talk principally with children and enjoyed playing cards with them; that he was sensitive and would "get mad" when "joshed." The witness stated: "I have several times seen him in a pretty wild fit of temper without apparent cause," but, being urged to give instances, could recall but one instance when William became angry and

refused to carry water for his mother, twenty years prior to the date of trial. The witness stated, "You could always see him laugh if you could up and speak anything about the girls; he always breaks out and laughs then." While staying at the house of witness, William would help with the work without pay. The witness testified that he knew of no business transactions which William had had except "over those cars." The witness expressed the opinion that William "was of unsound mind."

Tom Geary testified that he had known William Fleming for years; that he often came to the home of witness without invitation and would stay an indefinite period and would return home without notice; often setting around "grouchy" before leaving and would sometimes give his reason for leaving that he had to go home and feed the chickens; that William was a strong and able-bodied man and that witness could get a "lot of work out of him, as much as any man," but that someone had to work with him; that Fleming did not show aptitude in handling horses; did not unhitch and unharness them in the manner the witness would. He further testified that "you could not get much of a conversation out of him"; that William would rather talk to children, telling them exaggerated stories of what he had done and what he had seen; that he would talk with women and girls "mostly joshing them about getting married." That William would dance and sing whenever he had an audience, though he was neither a good dancer nor singer, and that he would sing over the telephone as long as anyone would listen to him; that at one time William told him of a trip to Helena when, being broke, he asked a policeman where he could sleep and related that the policeman took him to a place with bars on the windows and that William said it was "a nice place to sleep, a nice hotel." This witness also testified that William would get angry on slight provocation, and, asked to particularize, told of a sleigh ride, without even giving an approximate date, when the boys

started snowballing one another, and when someone threw William's cap out of the sleigh twice, that William became angry and refused to get into the sleigh; a priest told him to get in, and William "told the priest to go to hell." Asked whether in his opinion the man was of sound or unsound mind, the witness replied, "I would call him unsound, I guess, from what I seen of him."

Mike McCormick, a neighbor, testified that Fleming's conversation was broken, "sort of rambling"; that he would do considerable work; had stayed with witness one winter; in the spring the witness gave him $50, though not as wages. He also gave the opinion that William was of unsound mind.

Mary Ann Geary testified that, at one time, Fleming visited at her home in Deer Lodge; that he came in late one night and that her husband, who was sick, "scolded" Fleming for disturbing him; that the next night Fleming again came to the house late, but, finding it dark, slept in the alley although the night was cold, and the next morning explained that he did so rather than cause a disturbance.

Tom Geary, recalled, related an instance when Fleming was left at his home to cook a chicken, which he did without removing the entrails, and when called to account seemed to think it a good joke.

One Clarence Gordon testified that at one time Fleming told him of seeing a band of twelve bears in the canyon.

William Fleming does not appear to have been before the court for the court's inspection, and no evidence was adduced concerning what took place between him and Miller at the time of the transaction.

The phrase "entirely without understanding," as used in [5] section 5683, is construed, not as requiring proof of an entire lack of understanding on any subject, i. e., that the mind of the person is an absolute void, but such a degree of mental deficiency as to render him incapable of understanding a transaction of the nature involved. In *Jacks* v. *Estee,* above, the supreme court of California said: "Upon

the above findings, two questions present themselves for consideration—the one relating to the competency of the parties to contract, the other to the fact of their contracting. The former of these questions involves the construction of the provisions of section 38 of the Civil Code, to the effect that 'a person entirely without understanding has no power to make a contract of any kind.' Here, obviously, the term, 'understanding' is used to denote not the act of understanding, but the capacity or faculty of doing so; and the expression 'without understanding' is to be understood as referring to persons without such capacity. Nor is the expression to be understood in its literal and extreme sense—for hardly in any case can even the most insane person be said to be without some degree of understanding (1 Wharton on Contracts, sec. 98); but rather it is to be understood as restricted to the subject matter to which the section relates—which is that of contracts, executed and executory—and hence as applying to all persons who are entirely without the capacity of understanding or comprehending such transactions." As said above, section 38 of the Civil Code of California is identical with our section 5683, and their section 39 with section 5684.

The same court, in a case similar to this, after quoting sections 38 and 39, declared: "In the one case the contract is void, in the other merely voidable. * * * In the case at bar, no rescission has been or is attempted. Plaintiffs claim that the deed and bill of sale were absolutely void from the beginning. They attempted to establish a case within the purview of section 38." The court then quotes from *Jacks* v. *Estee,* above, and concludes: "It is impossible that a person without the capacity of understanding a particular transaction can in fact understand it." (*Ripperdan* v. *Weldy,* 149 Cal. 673, 87 Pac. 276.)

The interpretation of these statutory provisions, as rendered in the foregoing California cases, has been specifically ap-

proved by this court in *Kiley* v. *Danahey,* 61 Mont. 608, 202
Pac. 1110, the court adding: "The above two sections [now
sections 5683 and 5684] to our minds, evince a legislative
attempt to avoid conflicting judicial opinion as to when an
instrument is utterly void or merely voidable."

The above rule is stated somewhat more clearly as follows:
"In cases of alleged want of mental capacity the test is
whether the party had the ability to comprehend, in a reason-
able manner, the nature of the affair in which he partici-
pated. This is the rule in the absence of fraud, for fraud
when present introduces other principles ([*Lozear* v. *Shields*
(23 N. J. Eq.)], 8 C. E. Green, 511). This ability so to
comprehend necessarily implies the power to understand the
character, legal conditions, and effect of the act performed."
(*Jones* v. *Thompson,* 5 Del. Ch. 374; see, also, *Charley* v.
*Norvell,* 97 Okl. 114, 221 Pac. 255; *Miller* v. *Folsom,* 49 Okl.
74, 149 Pac. 1185; *Eaton* v. *Eaton,* 37 N. J. L. 108, 18 Am.
Rep. 716; 14 R. C. L. 590, sec. 45.)

Conceding that if, at the time of the transaction complained
[6] of, Fleming was "entirely without understanding," as
the phrase is above interpreted, his acts were wholly void and
of no effect, proof that he was of "unsound mind" is not
sufficient. That one of "unsound mind" may make a valid
contract, or one which may be merely voidable, clearly ap-
pears from the foregoing citations, and is emphasized by the
provisions of section 5684, quoted, which declares under what
circumstances a contract of a person of unsound mind, but
not entirely without understanding, may be rescinded, and
that is, by bringing himself within one or the other of the
subdivisions of sections 7565, Revised Codes of 1921, to-wit:
"A party to a contract may rescind the same in the follow-
ing cases only: (1) If the consent of the party rescinding
* * * was given by mistake, or obtained through duress,
menace, fraud, or undue influence, exercised by or with the
connivance of the party as to whom he rescinds, or of any
other party to the contract jointly interested with such party;

(2) if, through the fault of the party as to whom he rescinds, the consideration for his obligation fails, in whole or in part; (3) if such consideration becomes entirely void from any cause.''

While the court found that Miller and Whitney obtained the indorsement of the certificate of deposit and the execution of the notes through fraud, and that there was a failure of consideration, the judgment and decree were based upon the findings of entire lack of understanding, and this is the only ground relied upon by plaintiff in this court. However, the only evidence tending to support the finding that the seller had any knowledge of any mental incapacity on the part of Fleming, is to be found in the testimony heretofore quoted, and that a witness said to Whitney that it was a shame to take advantage of a fellow like Fleming, and Whitney's reply that ''someone was going to get his money and it might as well be me as the other fellow.'' It does not appear that Whitney had any interest in the car or took any part in the transaction, other than that he was with Miller at the time, or that he did in fact know that Fleming differed in any manner from other men.

The subject of failure of consideration will be later discussed. It is sufficient here to say that, even if properly pleaded, there is not sufficient evidence on which to base a finding warranting a rescission of the executed contract of sale.

The fact, therefore, that several lay witnesses ventured the opinion that Fleming was of ''unsound mind'' does not alone tend to support the findings of the court.

From the nature of the findings and the position taken by counsel for plaintiff in his brief and oral argument, we feel justified in stating that, as in the case of *Kiley* v. *Danahey,* there is no question of rescission in this case.

Accepting the position taken by counsel for appellants that **[7]** the judgment can only be upheld, if at all, upon the finding that Fleming was ''entirely without understanding,''

counsel for plaintiff, after reviewing the evidence tending to justify that finding, content themselves, without the citation of authorities to fortify their position, with the declaration that "there is absolutely no testimony in the record, directly or indirectly, contradicting the testimony above set out"; that "it appears from the testimony above referred to, and the record in this case, that there was ample testimony upon which to base a finding that the said William Fleming did not have the mental capacity to understand business transactions or the transaction involved in this case, and any other finding would in fact be contrary to the clear preponderance of the evidence."

It is true that the defendants offered no testimony on the subject; but this court is called upon, as was the trial court, to say whether the undisputed testimony justifies the findings made (*Weiss* v. *Hamilton*, 40 Mont. 99, 105 Pac. 74), and in doing so we must look to all of the evidence adduced on the part of the plaintiff, containing, as it does, the relation of facts which, in themselves, may disprove the ultimate fact contended for. These facts are that Fleming was a man of fifty-four years of age; that he had been considered of sufficient intelligence to file upon, make his final proof and receive patent to, a homestead; that on the settlement of his mother's estate in 1912, he had been permitted to receive his distributive share, amounting to over $6,000, and to handle the same, and that, eleven years later, he still had $1,400 of the amount; that he had never been "cheated out of any of his money"; that the brother, who testified that plaintiff was not able to understand business transactions, had for years been contracting with him for the use of his land, and plaintiff seems to have made a fairly good bargain. In addition thereto, plaintiff was shown to have conducted at least two similar transactions in the past, that is, he had purchased two second-hand automobiles, which transactions were not questioned by his relatives, of whom he had a number in the community. There is nothing in the evidence tending to show that Fleming did

not make a fair deal in this instance, or that any imposition was practiced upon him. He purchased a new car at the market price and value, and seems to have been able to make a better contract than the average man, as it appears that, instead of entering into a conditional sale contract, he secured title to the car without the payment of the entire purchase price. True, it is said that he had no use for the car, but if the purchase of a car which he did not need would brand him as a person "entirely without understanding," most of us have placed ourselves in the same category.

Giving full sanction to the rule heretofore discussed, we [8] must concede that it is equally well established that in the absence of a showing of entire lack of understanding, and in the absence of fraud or imposition, there is no degree of mental weakness on the part of either of the contracting parties recognized in the law as vitiating a contract. The law does not presume to make a distinction between much and little intellect. (Stewart on Legal Medicine, 155; *Somes* v. *Skinner*, 16 Mass. 358; *Person* v. *Warren*, 14 Barb. (N. Y.) 488; *Jackson* v. *King*, 4 Cow. (N. Y.) 207, 15 Am. Dec. 354; *Petrie* v. *Shoemaker*, 24 Wend. 45; *Markus* v. *Lester*, 59 Cal. App. 564, 211 Pac. 240; *Westerland* v. *Bank*, 38 N. D. 24, 7 A. L. R. 562, 164 N. W. 323; *Duroderigo* v. *Culwell*, 52 Okl. 6, 152 Pac. 605; *Loman* v. *Paullin*, 51 Okl. 294, 152 Pac. 73; *Farnam* v. *Brooks*, 9 Pick. (Mass.) 212.)

Thus in *Blanchard* v. *Nestle*, 3 Denio, 37, a case involving the validity of a will, the supreme court of New York said: "There is no grade of understanding, between the highest and lowest, which incapacitates the testator, when there is no fraud or imposition. In the language of Senator Verplank, 'to establish any standard of intellect or information beyond the possession of reason, in its lowest degree, as in itself essential to legal capacity, would create endless uncertainty, difficulty and litigation, would shake the security of property, and wrest from the aged and infirm that authority over their earnings or savings which is often their best security against

injury and neglect.  If you throw aside the old common-law test of capacity, then proofs of wild speculations or extravagant and peculiar opinions or of the forgetfulness or the prejudices of old age might be sufficient to shake the fairest conveyance, or impeach the most equitable will.  The law, therefore, in fixing the standard of positive legal competency, has taken a low standard of capacity; but it is a clear and definite one, and therefore wise and safe.  It holds (in the language of the latest English writer on this subject), that ''weak minds differ from strong ones only in the extent and power of their faculties; but unless they betray a total loss of understanding, or idiocy, or delusion, they cannot properly be considered *unsound.*''  (Shelford on Lunacy.)' '' Note (a) to the above case reads, in part: ''The same principle was applied to a deed, in the case of *Osterhout* v. *Shoemaker* and another, decided at this term, but which it is not thought necessary to report at length.  *  *  *  Bronson, C. J., in delivering the opinion of the court, said: 'Our law does not distinguish between different degrees of intelligence.  It does not deny to a man of very feeble mind the right to make contracts and manage his own affairs.  In the absence of fraud, proof of mere imbecility of mind in the grantor, however great it may be, will not avoid his deed.  There must be a total want of understanding.' ''

We are of the opinion that the evidence adduced was wholly insufficient to support the findings made, and, consequently, wholly insufficient to warrant the judgment entered.

(3) Consideration.  The contention of plaintiff, and the finding of the court, on lack of consideration, is based upon the allegation that by reason of the fact that the car in question was mortgaged to the bank, there was a failure of title in the seller and consequently a failure of consideration for the assignment of the certificate of deposit and the execution and delivery of the notes.  This contention was not raised in the complaint and appears only in the reply, as an addition to the grounds for relief set out in the complaint.

(a) The office of a reply is to join issue on or avoid new [9] matter alleged in the answer; it cannot aid the complaint by supplying an omission broadening the scope or adding a new ground of relief. (*Waite* v. *Shoemaker & Co.,* 50 Mont. 264, 146 Pac. 736; *Buhler* v. *Loftus,* 53 Mont. 546, 165 Pac. 601.) If for no other reason, the court's finding of failure of consideration cannot stand, but (b) the evidence clearly established the fact that the mortgage in question [10] did not prevent the passing of good title to the car on a *bona fide* sale, as it was understood and agreed, at the time of its execution, that Miller should proceed to sell the cars covered by the mortgage, and that on delivery to the bank, the holder of the mortgage, of the consideration received on such sale, that the car sold would be released from the mortgage on demand. Miller delivered to the bank the consideration received from Fleming. There was therefore no failure of consideration.

(4) From what has just been said, it is apparent that the bank is a holder in due course of the certificate of deposit and of the notes in question.

The phrase "holder in due course" is defined by statute as follows: "A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had previously been dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him, he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." (Sec. 8459, Rev. Codes 1921.)

The only evidence on which the court found that the bank was not a holder in due course is the existence of the mortgage, known to the bank as the holder thereof. The bank also had knowledge and was a party to the agreement by the terms of which the car in question was to be released from the operation of the mortgage.

It follows, therefore, that the findings of the court must be set aside and the judgment reversed.

(5) In the answer and cross-complaint of the bank, this appealing defendant prays for a judgment against plaintiff on the notes in question and for the release to it and D. C. Smith, intervener, of the certificate of deposit, and further asks for a decree of foreclosure and order of sale of the automobile under the mortgage above referred to. D. C. Smith, intervener, by his complaint in intervention, joins with the bank in seeking this relief.

(a) As, at the time the cross-complaint or counterclaim was [11] filed (August, 1924), the note for $1,000, payable, September 10, 1924, was not due and payable, and as there was no sale contract rendering the entire consideration due and payable on failure to pay any one of the notes when the same became due and payable, the defendant bank is not entitled to judgment on the last note, as action thereon is premature.

(b) Under the agreement between Miller and the bank, Miller was authorized to sell the automobile and, on delivery to the bank of the consideration received, the purchaser was entitled to have the car released from the mortgage. Miller having complied with the terms of this agreement, the bank was in no position to foreclose the mortgage on the car as the property of Miller. Certainly it could not recover judgment on the certificate and the notes, and at the same time proceed against the automobile.

Under the showing made, the bank, as the holder in due course thereof, is entitled to the release to it of the certificate of deposit, and to judgment against the plaintiff on the notes held by it other than the $1,000 note, for the amount of principal and interest due thereon, and for a reasonable attorney's fee, as provided in said notes, and for its costs of suit; and the intervener, D. C. Smith, is entitled to judgment against the plaintiff for his costs of suit herein.

The judgment is reversed and the cause remanded to the district court of Powell county, with direction to dismiss the complaint herein, and, on the counterclaim of the defendant First National Bank of Missoula to enter judgment in favor of said defendant and against the plaintiff William Fleming, releasing to said defendant the said certificate of deposit, and for the sum of $300 on the second note of the series mentioned, and for $350 on the third note of said series, and for interest on each of the said sums at the rate of ten per cent per annum from September 10, 1923, to date of judgment, and for a reasonable attorney's fee, as provided for in said notes, to be fixed by the court according to the rules of said court, and for its costs of suit, and to deny to said defendant any further relief on its said counterclaim or otherwise.

And the said court is further directed to enter judgment in favor of the intervener, D. C. Smith, and against said plaintiff for his costs of suit.

*Reversed and remanded, with directions.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.