BURNS *v.* CLARKSDALE PRODUCTION CREDIT ASS'N.

(Division B.   April 29, 1940.)

[195 So. 588.   No. 34078.]

36

John W. Crisler, of Clarksdale, for appellant.

**Maynard, Fitzgerald & Maynard,** of Clarksdale, for appellee.

Argued orally by **John W. Crisler**, for appellant, and by **Fletcher Maynard**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

This is a suit for money had and received, brought by the appellant in the Circuit Court to recover the sum of $398.90, representing the amount of a "subsidy check" due him as a farmer under the Cotton Price Adjustment Payment Plan for the 1937 cotton program. It is agreed that the check was obtained by the appellee during the latter part of the year 1938 from the Department of Agriculture of the United States upon the alleged ground that the appellee was entitled to use and apply the same on an indebtedness owing to it by the appellant for loans made to him in connection with the making of his crop during the year 1937, which loans were secured by a deed of trust given in February of that year on the crop, live stock and farm implements. The appellee did not claim the right, however, to so apply the proceeds of the check by virtue of the terms of the deed of trust, but upon the two grounds set forth under its second notice of special matter under the general issue: (1) That it held an assignment of the check from the appellant executed on June 3, 1937, as further security for an additional loan of $225 made to him on that date, it being

provided in the deed of trust that any further advance of money was to be deemed secured by the property embraced in the deed of trust; and (2) that the appellant had, prior to the completion of the harvesting of the cotton crop, disappeared, become incompetent, abandoned, or through his own fault or neglect lost control of the same in the early part of October, 1937, thereby enabling whoever succeeded him, and as such "successor in interest" became entitled to such cotton crop and *completed* the harvesting of the same, to receive the check as a cotton producer, in lieu of the person originally entitled thereto, under the provisions of Section 41 of the 1937 Cotton Price Adjustment Plan issued pursuant to the Act of Congress, Third Deficiency Appropriation Act, 50 Stat. 762; but which section of the Act also provides that: "The term 'successor' as used herein does not include any person who as a result of attachment, foreclosure, or other legal process came into possession of the cotton crop before, during, or after the harvesting of the crop, and in such case the person who so lost control shall nevertheless be deemed to be the cotton producer eligible for payment."

As hereinbefore stated, the two affirmative defenses above mentioned were embodied in the second notice under the general issue, whereas under a first notice it was alleged, (1) that the appellant had violated the terms of his deed of trust, which required that he comply with an agreement contained in his application for the original loan of $1,000, to the effect that all cotton produced on the property covered by it would be promptly ginned and stored in a warehouse approved by appellee and the receipts immediately turned over to the Secretary-Treasurer of the appellee Association, or as the Trustee may direct, the said notice under the general issue plea alleging that appellant had withheld some of the cotton warehouse receipts, and sold cotton without paying over to appellee the proceeds thereof; and (2) that appellant had abandoned the crop, was ar-

rested and placed in jail for selling the cotton without accounting for the proceeds, and had offered, while so incarcerated, to assign to appellee the check in question.

Appellant, as plaintiff in the court below, filed no replication to these notices, nor was he required to do so.under section 536 of the Code of 1930, insofar as his answer thereto may have consisted of a mere denial of the facts alleged therein. Proof in avoidance of the matters set forth in the notices was not being relied on by appellant as an affirmative defense thereto, except as to the sale of some of the cotton and his failure to account for all the proceeds, where he claimed the right to expend a portion thereof for harvesting purposes. Moreover, his act in that regard, though wrongful, would not affect the rights of the respective parties as to the check here in controversy. A violation of the terms of the deed of trust in that behalf would only have entitled the appellee to take charge of the crop, live stock and farm implements in connection with its authority to foreclose the same, and as a preliminary step thereto.

At the close of the appellant's evidence the appellee obtained a peremptory instruction in its favor, without having introduced any testimony to show whether the appellee either completed the harvesting of the crop as "successor" within the meaning of section 41 of the 1937 Cotton Price Adjustment Plan issued pursuant to the Act of Congress, Third Deficiency Appropriation Act, 50 Stat. 762, or otherwise; or whether, on the other hand, it took charge of the crop, live stock and farm implements, pursuant to its authority to foreclose the deed of trust, although proof of the first proposition was essential to the appellee's right to collect and use the proceeds of the check here involved, unless it in fact held an assignment thereof.

The proof offered by the appellant shows that when he gathered twelve bales of the crop of cotton he delivered the warehouse receipts for five bales to the appellee;

that he then sold the remaining seven bales in violation of the provisions of his deed of trust, using a part of the proceeds to defray the expenses of harvesting, and offered the remainder of such proceeds to appellee to apply on his indebtedness. That thereupon demand was made for payment to appellee of the entire proceeds of the seven bales sold, and that appellant was threatened with being placed in jail. That he left the Delta on that same day, and went to "the hills" to obtain the money from his brother with which to satisfy the demand, and ·returned the next night without having ever entertained any intention of abandoning the crop. That in the meantime the appellee had taken possession, and had also removed the livestock and farm implements from the premises. That on the next morning after his return from "the hills" he was arrested for selling cotton, on an affidavit made by the county prosecuting attorney, at the instance of the trustee in the deed of trust, who was also an attorney for appellee, and was placed in the county jail, where he remained for ten or fifteen days, and was then adjudged insane by a lunacy jury and committed to the state insane asylum at Whitfield, Mississippi, where he remained for nearly four weeks.

Thus it will be seen that the proof before the court below failed to disclose that the appellant had either disappeared or abandoned his cotton crop within the legal meaning of those terms as used in section 41 of the Act of Congress, supra, so as to entitle the appellee to claim the check here involved. Nor is he shown to have become incompetent until approximately two weeks after appellee had taken charge of the crops and other property, apparently in order to protect its interest under the deed of trust. Therefore, it was necessary for the appellee to sustain some other element of its affirmative defense by showing not only that appellant through his own fault or neglect lost control of his cotton crop, but also that appellee then in fact completed the harvesting thereof, after having first come into pos-

session not as a result of foreclosure or other legal process.

As to the alleged written assignment relied upon by the appellee, the same was not invoked in the first notice of special matter to be shown under the general issue, but it was merely alleged therein ·that the appellant, "while incarcerated in the county jail voluntarily of-·fered to assign to the defendant his 1937 subsidy payment. with the idea in view that if such an assignment was made defendant would be reluctant to press criminal charges against him." An offer to assign the check now in controversy, while he was in jail in October, 1937, on the idea that to do so would make the proposed assignee reluctant to press criminal charges, was inconsistent with the position taken by the appellee in its second notice under the general issue, filed a week later than the first one, wherein it was contended that it already held a written assignment of the same check executed in June, 1937. At least the allegation in the first notice above mentioned was inconsistent with the idea that the appellant had any knowledge of any claim on the part of appellee that the particular check had already been assigned; and this is especially true in view of the fact that the written assignment of June 3, 1937, made no mention of the check here involved. That assignment reads as follows:

"For and in consideration of an additional loan of Two Hundred Twenty-five and no/100 Dollars ($225.00) to be granted me by the Clarksdale Production Credit Association, Clarksdale, Mississippi, under loan # 2703 and to further secure said association, I hereby assign to the Clarksdale Production Credit Association any and all monies which may be due from the Secretary of Agriculture in connection with the compliance of 1937 Soil Conservation Program.

"Witness my signature this the 3rd day of June, 1937.

"(Signed) H. A. Burns.

"Witness: (Signed) W. S. Grantham."

The monies referred to in the foregoing instrument, to become due from the Secretary of Agriculture under the 1937 Soil Conservation Program, amounted to the sum of $352.36, and was received by the appellee in January, 1938, whereas the check in controversy in this suit was to become due as aforesaid under the 1937 Cotton Price Adjustment Payment Plan, and was received by the appellee in October, 1938, in the sum of $398.90. It is also to be noted that the monies to be received under the Soil Conservation Program were assigned to further secure the additional loan of $225 made on that day, the deed of trust previously executed on the crop, live stock and farm implements having stipulated that the payment of any further loans was thereby secured. Thus, it will be seen that the 1937 Soil Conservation check specifically mentioned in the assignment, and received by appellee in January, 1938, should have more than paid this additional loan for which it was assigned as further security to that already held therefor. But be that as it may, it is obvious that the money thereafter received under the 1937 Cotton Price Adjustment Payment Plan, in the sum of $398.90, not having been mentioned or referred to, either expressly or by implication, in the only assignment executed, cannot be held by the appellee by virtue of this assignment, either as security for the loan mentioned therein, or any other indebtedness due. Nor is such contention made.

It is said, however, that because a letter, addressed to the local county agent of the Department, was signed by the appellant contemporaneously with the execution of the foregoing assignment, as prepared by the appellee in its office, and as notice to such county agent of the said assignment, recited that: "I have this day assigned to the Clarksdale Production Credit Association my 1937 Soil Conservation check, and any other amounts that may be due me from the Secretary of Agriculture for compliance with the 1937 program," appellee was entitled to the check in controversy. Appellant had not in

fact assigned, in addition to his Soil Conservation check, "and other amounts that may be due me from the Secretary of Agriculture for compliance with the 1937 program." The only assignment which he had made to appellee when this letter was signed as notice to the county agent of what he had done is the assignment of the 1937 Soil Conservation check, and that instrument is unambiguous in its terms and speaks for itself. If it is true that he was told, in substance, that the letter was to be sent to the county agent, a stranger to the assignment actually made in favor of appellee, and merely as a notice to the agent that he had assigned his Soil Conservation check, he had a right to assume that the letter, intended only as notice of an assignment, did not enlarge the purport of the instrument referred to.

Therefore, under the circumstances disclosed, we are of the opinion that it cannot be said that there was an assignment made of the check here involved.

Nor can it be said, as heretofore stated, that the proof offered by the appellant, as plaintiff and witness, discloses that the appellee became his "successor," within the meaning of section 41, supra, or that it completed the harvesting of the crop at all, as therein required. This issue presented a question for the jury under the proof; and on the other hand it was also for the jury to determine whether appellee came into possession of the cotton crop as a result of foreclosure under its deed of trust, or other legal process, rather than as "successor" under the statute above referred to.

Reversed and remanded.