[File No. 6480.]

JOHN SOUTHALL, Appellant, v. MARTIN MICKELSON, Respondent.

(277 N. W. 601.)

Opinion filed February 7, 1938.

*Hugo P. Reminglon,* for appellant.
*F. J. Graham,* for respondent.

MILLER, Dist. J.   During the spring of 1930 plaintiff and defendant entered into a written contract whereunder the defendant agreed to farm certain lands of the plaintiff in LaMoure County for a share of the crops.   It was further agreed that the plaintiff would from time to time purchase livestock to be placed on the farm for the purpose of feeding and sale, and that the defendant would give his note for one-half of the purchase price thereof.   The title to such livestock bought for feeding purposes was to remain in the plaintiff and the proceeds from such stock when sold should be applied first on the purchase price.   The profits were then to be divided equally, the defendant's share to be credited on his indebtedness, including the purchase price of nine horses amounting to $320.   Any loss was to be sustained by the parties equally.   Throughout the contract plaintiff is referred to as the landlord and the defendant as the tenant.   The tenant agreed to farm the land, furnish the equipment, pay one-half of seed, twine and threshing bills, deliver to plaintiff one-half of the poultry, eggs, cream and butter produced and use his one-half of all feed crops for feeding the stock.   Either party might terminate the contract on giving the other written notice, and when terminated the livestock, grain and hay were to be sold at public auction.   The proceeds were then to be used to pay the purchase price of all livestock and the balance to be divided equally.   From defendant's share was to be deducted all indebtedness to plaintiff, accounts, advances, etc. The contract further provided that the plaintiff should have a landlord's lien on all such proceeds derived from the sale of any livestock kept for feeding purposes until his claims were paid, and that the title to all livestock bought for feeding purposes should be in the plaintiff. Both parties operated under this contract for about four years without an accounting.   During such term many head of livestock were bought and sold and much feed was purchased.   The defendant sold cream, eggs, chickens, etc., retained the proceeds therefrom and was charged therefor by plaintiff.   He also made several advances to the defendant, which included charges for horses and machinery.   The plaintiff kept a record of the various transactions in nine different accounts, des-

ignated as follows: Personal, Machinery, (Personal obligations), Machinery loaned, Horses and Harness, (Personal obligation), Poultry, Sheep, Hogs, Cattle, Grain and Feed.

The defendant sold several horses and some machinery, claiming to be the owner, and plaintiff sought in separate actions to recover same from the purchasers, alleging ownership by virtue of the reservation of title in the contract. At the times of sales defendant was in possession of such property and the purchasers bought in good faith. The contract had never been filed for record. The rights of creditors are not involved and no controversy arises under the farm lease phase of the contract. Both parties ask for an accounting. The evidence in this case and in the claim and delivery actions against O. B. Quam and Norman Thompson was submitted at one time but separate judgments were entered.

It is clear that the plaintiff sold the horses and machinery, excepting one rotary hoe, one Jayhawk stacker and one milking machine, to the defendant on his personal account, and that the title to such property was not reserved in plaintiff under the terms of their farm contract. Such contract provides that the defendant shall furnish all teams, machinery, equipment, etc.; that title to only such livestock as was placed on the premises for feeding purposes was reserved in plaintiff; it recites that the defendant bought nine horses for $320. The plaintiff's ledger designates the horse and machinery accounts as "Personal Obligations." By reason of the foregoing, title to the horses and machinery involved, excepting the rotary hoe, stacker and milking machine, which are plaintiff's separate property, vested in the defendant, and therefore plaintiff must fail in the two claim and delivery actions tried with this case and above mentioned. However, the defendant would be indebted to the plaintiff for the unpaid purchase price of such property.

Both parties demanded an accounting and evidence was taken and the case was tried on the theory that the action was one in accounting. The trial court found that the plaintiff was entitled to judgment against the defendant in the sum of $325.09, with interest thereon at the rate of 6 per cent per annum from August 22, 1934.

The evidence discloses that the trial court found that certain moneys, aggregating in all $886, resulting from or growing out of transactions

between the parties, had been deposited with the clerk of the district court; that $469 of the moneys so deposited are proceeds of the sale of certain cattle; and that $417 are proceeds of corn and hog allotment payments made by the federal government under the Agricultural Adjustment Act.

. The corn and hog allotment payments were made by check, payable jointly to the plaintiff and the defendant. It is apparent therefore that the corn and hog allotment payments must have been approved and made on the basis that the arrangement between the plaintiff and the defendant was a joint venture and not that of landlord and tenant, because in the latter case the checks would have been issued to each of the parties individually.

One of the cardinal principles of the reduction program set up under the Agricultural Act was that payments to a contract signer should go to such signer free from all claims. In this case it appears that the parties endorsed the checks. If it were the intention of the parties that the moneys received by the parties should be utilized for the purpose of paying whatever indebtedness existed in favor of one of the parties as against the other, then, of course, such understanding would be valid and given effect. But the record in this case does not disclose that such was the understanding. The stipulation entered into upon the trial indicates rather that it was the intention of the parties that the proceeds of the check should be distributed between the parties in accordance with the rights which they had under their contracts with the Agricultural Adjustment Administration. That this was the understanding was further evidenced by what counsel for the plaintiff said in his brief submitted in the trial court. In such brief he said: "Both parties should endorse the hog allotment checks and they should be divided. Southall is really entitled to all of those as well, but under government regulation there is no way Southall can get it. It is just another little gift to Mickelson."

. The trial court directed that the money on deposit be disposed of as follows: "That the Clerk of the District Court of LaMoure County pay to the attorney for the plaintiff the sum of $677.50 and pay to the attorney for the defendant the sum of $208.50." This was correct. Each of the parties should be paid one-half of the proceeds from the corn and hog allotment checks free from any claim of the other, while

the proceeds from the sale of cattle should be considered under the contract.

In order to remove future doubt as to ownership of the property involved, it should be explained that the horses and machinery sold to and charged against the defendant on his personal account remain his property. The remainder of the livestock and produce left upon the farm remained the property of the plaintiff under the contract and the defendant has been allowed credit for his interest therein.

The judgment appealed from however must be modified. This case is here on a trial de novo. After reviewing the testimony and records of both parties it appears that the plaintiff is entitled to judgment against the defendant for the sum of $1656.30, besides his costs on appeal. Therefore, the Clerk of the District Court should make disbursement of said funds on deposit to the respective parties in the proportions herein indicated, and that the cattle payment to plaintiff having been taken into account should not be deemed a credit on his judgment.

The judgment of the District Court as modified is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE and BURR, JJ., and JANSONIUS, Dist. J., concur.

MORRIS, J., disqualified, and BURKE, J., being detained by illness, did not participate, Hon. HARVEY J. MILLER, Judge of the Sixth Judicial District, and Hon. FRED JANSONIUS, Judge of Fourth Judicial District, sitting in their stead.