[File No. 6664.]

TOBIAS LEE, as Administrator of the Estate of Margaret Lee, Deceased, Betsey T. Lee, Albert Lee, Thomas Lee, Mabel Nelson, Tillie Knutson, and Tobias Lee, Individually, Appellants, v. GEORGE LEE, Josephine Lee, Julia Lee, and Myrtle Otterson, Respondents.

(292 N. W. 124.)

Opinion filed May 7, 1940.

*Burnett, Bergesen & Haakenstad,* for appellants.

*Fuller & Powers,* for respondents.

BURR, J. This is an action to set aside two deeds executed and delivered by Margaret Lee about seven months prior to her death.

This land had been owned by Thor Lee. Margaret Lee was his wife, and the parties are their children. On August 28, 1931, Thor Lee and his wife deeded to the wife the northwest quarter of section 3 and the northeast quarter of section 4 in township 136, range 51, in Richland county. The deed was acknowledged, and was recorded in the office of the Register of Deeds on August 29, 1933. This deed, Exhibit A, a warranty deed, purports to "grant, bargain, sell and convey" unto Margaret Lee, "her heirs and assigns, forever;" the land involved herein "to have and to hold the same;" and covenants that Thor Lee was "well seised in fee," and had "good right to sell and convey the same;" that the land was free from all encumbrances, and the grantors would warrant and defend the land "against all persons lawfully claiming or to claim the whole or any part thereof."

Thor Lee died on September 9, 1933. On November 22, 1934, Margaret Lee conveyed the land in section 3 to George Lee, and the

land in section 4 to Josephine. The deeds, Exhibits B. and C., are in the same form and have the same covenants as Exhibit A. They were acknowledged on November 22, 1934, and recorded on June 5, 1935.

Margaret Lee died on June 14, 1935. Tobias Lee was appointed administrator of her estate, and with five of his brothers and sisters, brings this action, charging: that, despite the language of his deed, Thor Lee intended to vest only a life estate in his wife, and upon her death the land was to be divided equally among the children; that George Lee and Josephine Lee obtained their deeds by fraud and undue influence at a time when their mother was very ill and totally unable to know and understand what she was doing; that the grantees gave no consideration whatever for the land; that they have a secret agreement with their sisters, Julia and Myrtle, by which the latter were "to participate in the benefits to be derived from the said transfer of said property."

The defendants Julia and Myrtle made no appearance. The remaining defendants deny the main allegations of the complaint. In a counterclaim, they ask that they be adjudged the owners of the land and have the right to its possession, and that none of the plaintiffs has any estate or interest therein.

The trial court found that the deed to Margaret Lee conveyed title to her in fee simple; that there was no agreement or understanding that she should have merely a life estate; that Margaret Lee "was in good health of both mind and body and capable of conducting her affairs," and "remained in good health and in a condition to conduct her affairs until sometime in the month of May, 1935 . . . ; that the purport and effect of the deeds was explained to and understood by the said Margaret Lee and that said deeds were prepared and executed to accomplish the specified desires of said Margaret Lee as expressed to her . . . attorney."

The court therefore held: that George Lee was the owner in fee simple of the land in section 3, and Josephine Lee of the land in section 4, each entitled to the possession of the land owned by him; and none of the other parties to the action had any "estate or interest in or lien or encumbrance upon the real property described in the complaint herein."

Judgment was ordered in conformity with these findings and duly entered. The plaintiffs appeal from the judgment and demand a trial de novo.

The issues involve the validity of the deed to Margaret Lee, Exhibit A. The witnesses to this deed are Mrs. Betsey Lee, one of the plaintiffs, and the defendant, George Lee. Neither witness testifies to any statement by the father that the mother was to get a life estate only. One Rost, an employee in a bank, made out the deed. He came to the house, and the deed was signed by the father and mother. The mother wanted the deed put on record and wrote the letter accompanying the deed, when it was sent to Wahpeton for record, though George mailed the letter for her. Betsey Lee says her mother and Mr. Rost were in the father's bedroom at the time the deed was signed, and she and George Lee were in the dining room. Plaintiff Tobias Lee was with George when arrangements were made with Rost for the latter to attend to the execution of this deed, but Tobias claims he knew nothing of the contents.

There is no testimony showing the father's ignorance of the contents of Exhibit A., or showing he did not know what he was doing when he deeded the property to his wife, or that the deed is other than he intended. There is some testimony regarding his ability to read English or to sign his name. There is no question raised as to execution or delivery of the deed, and Mr. Rost was not called as a witness.

Exhibit A. purports to "grant" and convey the property to the mother. Such "grant" is "conclusive against the grantor and every one subsequently claiming under him, except a purchaser or encumbrancer, etc." Comp. Laws 1913, § 5522.

And "a fee simple title is presumed to be intended to pass by a grant of real property unless it appears from the grant that a lesser estate was intended." Comp. Laws 1913, § 5527.

Nothing in the grant indicates that a lesser estate was intended, and other than the deed, there is no evidence of the grantor's intent at the time the deed was executed. Clearly, the trial court was right in holding that Exhibit A. conveyed a fee simple title to Margaret Lee, and we so find.

The issues involves the validity of Exhibits B. and C. also. The controversy in this respect rages around the capacity of Margaret Lee

to execute the instruments, and whether they were obtained by either fraud or undue influence, or both.

The test of capacity is laid down by this court several times. In Nelson v. Thompson, 16 N. D. 295, 301, 112 N. W. 1058, 1060, this early rule, deduced from Jackson ex. dem. Cadwell v. King, 4 Cow. (N. Y.) 207, 15 Am. Dec. 354, 355, was adopted: "Upon the question of incapacity to render a deed invalid, the court must be satisfied that the grantor was not in a situation to transact that particular business rationally . . . not, on the one hand, that he should be capable of doing all kinds of business with judgment and discretion, nor, on the other hand that he should be wholly deprived of reason, so as to be incapable of doing the most familiar and trifling work. That, if the mind and memory were in such a situation at the time of executing the deed as to render him wholly incompetent to judge of his rights and interests in relation to that transaction, the deed would be void."

In Meyer v. Russell, 55 N. D. 546, 214 N. W. 857, we say: "Impairment of faculties by disease or old age will not invalidate a deed, provided, the grantor fully comprehended its meaning and effect, and was able to exercise his will in executing it."

Again: "Before the court will set aside a conveyance on the ground of mental incompetency of the grantor it is necessary to show that the grantor, at the time of the execution of the instrument, was so weak mentally as not to be able to comprehend and understand the nature and effect of the transaction involved." Nordby v. Sagen, 64 N. D. 376, 252 N. W. 383.

Old age alone does not affect competence, even though the mind may be weak and impaired compared with what it has been, and even though the capacity to transact general business may be lacking. This is the rule set forth in 16 Am. Jur. 486, Deeds, § 85, and it is supported by the citation given therein. Delaplain v. Grubb, 44 W. Va. 612, 30 S. E. 201, 67 Am. St. Rep. 788. On this point see Doyle v. Doyle, 52 N. D. 380, 389, 202 N. W. 860, 863.

The capacity to execute a deed is the capacity at the time the deed is made. Delaplain v. Grubb (W. Va.) supra.

In the absence of any incapacity based upon the law of the land, the owner of the land has full power over it to dispose of it. McLeod

v. McLeod, 145 Ala. 269, 40 So. 414, 117 Am. St. Rep. 41; Coblentz
v. Putifer, 87 Kan. 719, 125 P. 30, 42 L.R.A.(N.S.) 298.

The trial court, experienced in sifting evidence and judging testi-
mony, found the grantor was competent to execute the conveyances.
We have the testimony of two disinterested, unrelated witnesses. There
is nothing in their testimony whatever to show them biased toward
either side. They are the witnesses who naturally would be called in
—the doctor, who attended to the physical needs of the grantor, and
the lawyer employed in the case.

The doctor's testimony is brief. He has practiced his profession in
Fargo since 1902, and he treated Mrs. Lee during the prolonged illness
which ended in her death. Mrs. Lee was 74 years old when she died,
on June 14, 1935. The doctor treated her during her last illness.
She came to see him at his office in September, 1934. He called on her
at her house. She was suffering from a cold, and he was afraid it
would develop into a bronchial condition. He testified she was com-
petent and in her right mind at that time, and he was of the opinion
that this continued until the time of her death. He acknowledged that
with increasing age and in the progress of an illness which eventually
becomes fatal, "there is an element of senility coming on at the clos-
ing," but that prior to May and June of 1935, he would say she was
competent. Nothing is said about any mental weakness. He says that
old people having an illness that makes inroads upon the general health
may have "quirks of mind." He supposed that as people grow older,
they may be subjected to the influence of those who are near them,
particularly if they are dependent. They are more likely to favor
those who give them the most support and attention. Judging by this
testimony, showing us the nature of her trouble, the grantor was com-
petent.

The other witness is the lawyer. He is one of the counsel, but ap-
parently was not counsel prior to the execution of these deeds. The
record shows he took special care to investigate the grantor's condi-
tion. He had the deeds drawn, and he signed them as a witness. As
notary public he took the acknowledgments. The grantor, with the
defendants George and Josephine Lee, came to his office on the day
the deeds were drawn, and he received from the grantor the description
of the property. After directing his stenographer to prepare the deeds,

he talked with the grantor, at some length, on "various matters not pertaining to these deeds or to her business or personal affairs. I did not know Mrs. Lee prior to that time."

He talked with her about social and local affairs. He said, "It is my opinion that Mrs. Margaret Lee was in every way competent and had full possession of her mental faculties."

Not only this, but in order to be certain of the matter, and before the deeds were executed, he required George and Josephine to leave the office, and then he "explained the significance of the deeds to Mrs. Lee and asked her if that was her desire and she said that it was." She had told him that "she wanted to do everything possible to avoid trouble after her death and she said that trouble might develop between some of the brothers and sisters that didn't share in the distribution of the property."

It was because of this latter remark he had the son and daughter leave his office. To show the attention which the lawyer gave to the matter, he testified that as he regarded deeds given in this way "somewhat as a testamentary practice," he thought "that none of the parties should be present when the deed was executed," that is, none of the grantees. The action of the counsel shows careful consideration to a matter that would be of just ordinary importance to him.

A cousin of the parties testified that for years she visited Mrs. Lee, her aunt, and up to the time of her death. While visiting her during her last illness she "thought she was as she ever was all of the time I knew her."

In Doyle v. Doyle, 52 N. D. 380, 202 N. W. 860, supra, a deed was upheld, though the mother was old and febble, and the grantee was a son in his prime. We call attention there to the rule that "where a conveyance is made and a relation of confidence and trust exists between the grantor and the grantee, if the circumstances are such that the grantor is likely to be subjected to the will of the grantee, the burden is cast upon the grantee to show that the conveyance was made freely and voluntarily and with full knowledge on the part of the grantor of its character and effect."

The record here does not show the grantor was feeble at the time she executed the conveyances. In the Doyle Case, the attorney went to see the grantor, but in this case, the grantor went to see the attorney. It

is true the lawyer, in this case, does not state by question and answer what he said to her. He asked her if it was her desire, that is, that she wished to execute the deed, and she said it was; and not only that, but she stated why. We are satisfied that the grantor was perfectly competent to execute the conveyances on November 22, 1934.

However, plaintiffs claim that, despite whatever capacity the grantor may have had, the execution of the deed was caused by fraud and the exercise of undue influence over the grantor on the part of the grantees.

The trial court, in his memorandum opinion, states: "The court is equally unable to find any fraud, duress or undue influence in connection with the deeds issued by Margaret Lee, the mother, to George Lee and Josephine Lee. So far as consideration is concerned for the excution of the deeds, it is ample as to the one from the mother to the daughter, Josephine. While a consideration of less consequence and importance is shown in connection with the deed from the mother to the son, George, it does show that George gave considerable attention to his mother and helped her in many ways. No good would come from an extended review of the evidence in the case and the authorities cited by the respective parties. These cases very largely rest upon the facts developed, and in the light thereof, the court must make its decision."

The evidence shows that the mother lived with Josephine, and as we pointed out in Doyle v. Doyle, supra, if "the circumstances are such that the grantor is likely to be subjected to the will of the grantee, the burden is cast upon the grantee to show that the conveyance was made freely and voluntarily and with full knowledge on the part of the grantor of its character and effect."

See also Fjone v. Fjone, 16 N. D. 100, 112 N. W. 70. But it is also the law that "before a conveyance of real property will be set aside as having been given under duress or menace, the proof must be clear, specific and satisfactory." Anderson v. Anderson, 17 N. D. 275, 115 N. W. 836.

The mere fact that a parent deeds property to a child does not of itself raise a presumption of undue influence. McLeod v. McLeod, 145 Ala. 269, 40 So. 414, 117 Am. St. Rep. 41, supra; Mallow v. Walker, 115 Iowa 238, 88 N. W. 452, 91 Am. St. Rep. 158. And this is particularly so where the child is supporting the parent. Soper v. Cisco, 85 N. J. Eq. 165, 95 A. 1016, Ann. Cas. 1918B, 452. There

is no presumption of undue influence or fraud arising merely from the fact that some children are favored to the exclusion of others. Burton v. Burton, 82 Vt. 12, 17, 71 A. 812, 814, 17 Ann. Cas. 984. The rule is stated in 16 Am. Jur. 661, Deeds, § 393: "No presumption arises from such relationship (parent and child) although some children are thereby favored to the exclusion of others and although the beneficiary is the adviser of the parent and has the control and management of his affairs. This is true even though the parent is aged or aged and infirm."

No good result will come from a rehearsal of the quarrels which have arisen among the brothers and sisters. There is conflicting testimony, but much is trivial, and of the kind in which it is difficult to divorce the actual facts from the impressions which the facts made upon the minds of the witnesses, for the supposed motives which inspired the action must be conjectural in many cases. As an illustration, it is claimed that Josephine, when her mother was intending to attend church, attempted to dissuade her, saying, "Only crazy people will go to church in this kind of weather, and mother is getting old and she might slip." Josephine says she told the mother "she could go if she wanted to but I said it is awful slippery weather, if you should fall or something, but I said I didn't care if she went." On the one side this is cited to show the dominance that Josephine had over the mother, her tendency to boss and to treat the mother as more or less of an imbecile. On the other hand, it is cited to show Josephine was anxious for the health of her mother. Knowing she had a bronchial affection, she did not want her mother to be exposed to cold and disagreeable weather, and was afraid she might fall on the sidewalk because of its condition. Testimony is given tending to show statements of Josephine indicating a plan on her part to have her brothers and sisters excluded from sharing in the mother's property, and such are denied in effect.

The findings of the trial court are entitled to appreciable weight in this court upon a trial of this case de novo, especially when the witnesses appear before the trial court, and the court observes their demeanor and hears them testify. Depositors' Holding Co. v. Brown, 64 N. D. 222, 251 N. W. 295; Thede v. Rusch, 65 N. D. 34, 256 N. W. 409; Donovan v. Johnson, 67 N. D. 450, 274 N. W. 124; Southall

v. Mickelson, 68 N. D. 191, 277 N. W. 601, 120 A.L.R. 693, though not necessarily controlling, Passenger v. Coan, 61 N. D. 569, 238 N. W. 773.

We are satisfied, upon the evidence, the trial court was correct in holding that Margaret Lee, at the time Exhibits B. and C. were executed, was competent to make such conveyances. We find Margaret Lee was competent to execute the deeds at the time they were executed; that she was not induced to do this by fraud or undue influence, and that the conveyances were of her own free will and accord, and as she desired. Therefore, the judgment of the lower court is affirmed.

NUESSLE, Ch. J., and CHRISTIANSON, MORRIS, and BURKE, JJ., concur.