FEDERAL FARM MORTGAGE CORP., Appellant, v. HOLM, et al, Respondents.

(295 N. W. 662.)

(File No. 8306. Opinion filed December 24, 1940.)

Rehearing Denied April 16, 1941.

**Clair L. Kintz** and **Otto A. Gruhn,** both of Omaha, Neb., **W. J. Jacobs,** of Faulkton, and **Geo. H. Fletcher,** of Aberdeen, for Appellant.

**Roy A. Nord,** of Faulkton, for Respondents.

PER CURIAM. Plaintiff has appealed from an order of the circuit court of Faulk County made upon the final report of the receiver who was appointed in a foreclosure proceeding to collect the rents and profits from the mortgaged premises. Plaintiff acquired a mortgage executed to the Land Bank Commissioner by Mathew Holm, now deceased, and his wife, Margaret Holm, to secure a note in the sum of $6,500, which mortgage was expressly subject to a first mortgage to the Federal Land Bank of Omaha in the

sum of $16,500. This action was commenced against the administratrix of the estate of Mathew Holm and others to foreclose the second mortgage. The mortgage contained the following recital: "In the event suit is brought in equity to foreclose this mortgage, the Court may appoint a Receiver to take and hold possession of said premises During The Course Of Such Proceeding, to collect the rents and profits therefrom for the benefit of the Mortgagee, to pay the taxes upon said premises, to keep the same in repair, and to apply the balance upon the mortgage indebtedness."

On March 15, 1937, an order was entered appointing H. L. Norton receiver of the premises with the usual powers of receiver in such cases. There was no appeal from this order and the receiver remained in possession and collected rents and soil conservation payments during the period of redemption. Judgment was entered on April 16, 1937, and the premises were sold for $5,341.10, leaving a deficiency of $2,000. Plaintiff was the purchaser at the foreclosure sale and after the expiration of the period of redemption received a deed.

On May 17, 1937, plaintiff and the Federal Land Bank of Omaha entered into an agreement with Margaret Holm individually and as administratrix of the estate of her deceased husband wherein the mortgagees released Margaret Holm and the estate from personal liability in consideration of the assignment of 165 shares of stock in the James Valley National Farm Loan Association which stock had been pledged as additional security for payment of the Federal Land Bank loan.

The receiver collected $318 as rent and soil conservation payments in the amount of $519.47 and expended $871.60 for seed grain. Defendant administratrix, prior to the commencement of this action, had leased the mortgaged premises. She agreed to furnish seed grain and to pay a specified portion of the expenses of harvesting and threshing. Funds were furnished by the plaintiff, the Federal Farm Mortgage Corporation, for the purpose of purchasing seed to enable the receiver to comply with the terms of the lease. On October 31, 1938, the receiver filed an amended

final report showing receipts of $837.47, disbursements of $891.75 and payment of lessor's share of the expenses of harvesting and threshing by offsetting the cash rentals accruing under the terms of the lease. Objections were filed to the report and upon hearing the objections the court entered an order directing the payment of the amounts collected by the receiver to the administratrix of the estate of deceased mortgagor.

■ Respondents contend that since the receiver held the funds subject to final disposition by the court plaintiff cannot appeal from the order. Respondents did not question the accuracy of the account rendered by the receiver and no appeal was taken by him. Whether or not the order of the court was a matter of concern to the receiver and from which order he could appeal, we need not determine. This appeal was perfected prior to July 1, 1939, and under the statute then in effect a party aggrieved had a right of appeal from a final order affecting a substantial right made upon a summary application in an action after judgment. §§ 3145 and 3168, Rev. Code 1919. We are satisfied that plaintiff was a party aggrieved and entitled to assert its claim to the funds collected by the receiver. The fact that the receiver has not appealed does not affect the right of the plaintiff to assert its claim.

■■ A mortgagee has a mere lien upon the mortgaged premises and holds the same as security only for the debt or obligation. SDC 39.0204. If the rents and profits have not been pledged, it is the general rule that the owner of the equity of redemption is entitled to possession of the mortgaged premises and the rents and profits therefrom until execution of deed to purchaser at foreclosure sale. Knudson v. Powers, 56 S. D. 613, 230 N. W. 282; Hulseman v. Dirks Land Co., 63 S. D. 404, 259 N. W. 679. See also Bickert v. Cargill Elevator Co., 64 S.D. 112, 264 N. W. 817.

■ Respondents contend that the provisions of the mortgage to the effect that the court in the event of foreclosure by action may appoint a receiver to take possession and collect the rents and profits for the benefit of the mortgagee did not give plaintiff a lien upon the rents and profits

arising from the premises, and that if the mortgage be otherwise construed the necessity for the appointment of a receiver ceased and he should have been discharged after deficiency decree was satisfied by a transfer of the shares of stock in the James Valley National Association. If it be conceded that respondents were entitled to the rents and profits of the premises until the time of redemption had expired and execution of the deed to the plaintiff, we do not think it follows that the estate of the deceased mortgagor was entitled to the rents and profits without reimbursement for amounts necessarily expended for seed to enable the receiver to comply with the terms of the lease entered into by defendant administratrix. The receiver in obedience to the order of the court and without objection on behalf of respondents took possession of the premises and continued to act without objection. The expenditure for seed grain would necessarily have been made if defendant administratrix had remained in possession, and should be paid from the amounts collected by the receiver. 53 C.J. p. 301 note 84. Dealing with a situation similar in many respects to the instant case, this court in Knudson v. Powers, supra, held that where the mortgagors had acquiesced in a receivership of the mortgaged property, they could not oppose the allowance of a reasonable compensation out of proceeds collected by him.

■ Respondents contend that the receiver was not entitled to receive the payments made under the Soil Conservation and Domestic Allotment Act, 16 U.S.C.A. § 590a et seq., and that the receiver must be held to have possession of these funds as trustee for respondents. Under the provisions of this Act, payments for 1937 were made to agricultural producers if they conformed with the practices determined by the secretary of agriculture to be necessary to effectuate the purposes of the Act. § 590h. The Act did not then contemplate that the proportion of the payments which a land owner was entitled to receive should constitute a gratuity. We can perceive no ground upon which respondents are entitled to the payments in question without reimbursement for amounts necessarily expended for seed grain.

The extent to which the receiver contributed to these practices was determined by an agency of the Federal Government and payment was made accordingly.

If the receiver collected these payments as trustee for the use and benefit of respondents as contended by counsel, we think it would be inequitable to require him to account for these funds to the respondents without deducting the amounts expended for seed. The respondents sustained no loss by reason of the receivership. A normal crop was not produced because of drouth, and the expenses incurred were more than the proceeds collected by the receiver.

For the reason indicated the order of the lower court is reversed and the cause remanded for further proceedings not inconsistent herewith.

SMITH, P.J., and POLLEY, ROBERTS, and RUDOLPH, JJ., concur.

WARREN, J., dissents.

WARREN, J. (dissenting). The majority opinion seems to concede that the respondents were entitled to the rents and profits from the premises until the time of redemption expired and the execution of a deed to the appellant, and then observes that it does not follow that the estate of the deceased mortgagor was entitled to the rents and profits without reimbursement of the amounts necessarily expended for seed to enable the receiver to comply with the terms of the lease entered into by the administratrix. With that view I agree. It, however, does not follow that the receiver is entitled to the $519.47 soil conservation fund by virtue of his receivership as against the owners of the equity of redemption.

There would have been no value in the crops if appellant had not advanced funds with which to purchase seed and care for them. The evidence tends to show that there would have been no crops, hence no proceeds, without the furnishing of funds by the appellant. Had there been a net profit derived from the crops on the land covered by the appellant's mortgage doubtless the respondents would have been entitled to the same. The respondents would

have lost nothing, but there was a chance of harvesting a crop which would bring an excess over the cost of the seed furnished. Columbia Trust Co. v. Farmers' & Merchants' Bank et al., 82 Utah 117, 22 P.2d 164.

From the reasoning employed by the Utah Supreme Court in deciding issues involved in the repayment of the money expended for seed in the case cited above it would seem that it is tied up with and relates only to the very materials and things that produce the returns on account of money which had been expended to produce them, and in that case there were crops involved as in the instant case and it will be noted that the court makes mention of the fact that the land owner has a right to the overplus above what had been expended in producing the crops. I believe therefore that the situation that we meet in the facts in this case must stop with the appropriation to the appellant of the proceeds which emanated from the sale of the crops and can go no further and cannot touch the soil conservation funds.

This soil conservation fund is somewhat in the nature of a gratuity to the owner of the premises who has the right to receive a portion of any crop, or the proceeds thereof on any farm. It would seem from the 1937 Agricultural Conservation Program, NCR Bulletin 101, section 3, at page 37, that a person solely by virtue of a credit relationship is not entitled to receive any payment with respect to such farm pursuant to the Conservation Program in the North Central Region.

In seeking further light upon the mortgagee's right to the soil conservation payment I turn to Southall v. Mickelson, 68 N. D. 191, 277 N. W. 601, 602, 120 A.L.R. 693, and quote: "One of the cardinal principles of the reduction program set up under the Agricultural Act [7 U.S.C.A. § 601 et seq.] was that payments to a contract signer should go to such signer free from all claims."

While it must be conceded that the North Dakota high court was dealing with a check that was payable to both parties, yet the net result of the reasoning is the same. In the instant case there are no facts which can be construed

so as to permit the mortgagee any claim upon this fund. The contract signer was entitled to this fund free from all claims.

I cannot agree with the statement in the majority opinion "the extent to which the receiver contributed to these practices was determined by the agency of the Federal Government and payment was made accordingly". The record, in my opinion, does not sustain such a view as there is authority to the effect that payments made to agricultural producers pursuant to statutes in aid of agriculture belong to the person actually entitled to the crop and land rather than to the person in possession who actually produces the crop and makes application for the payment. 2 Am. Jur. 398 (1940 A.J.S. 15).

Just how this receiver became a party to the agricultural program for soil building which in its main seems to require that certain land shall lay idle is to me inconceivable. While I agree that the appellant is entitled to recover for the price of the seed and the work reasonably expended to produce the crop, yet that payment should and ought to come out of the crop he produced and not out of the funds by virtue of the conservation program under the allotment taking certain acreage of this farm out of production. This federal money under the allotment contract for restriction of production clearly belonged to the respondents. Plaza Farmers' Union Warehouse & Elevator Co. v. Tomlinson et al., 183 Wash. 617, 49 P.2d 36, 101 A.L.R. 417.

An examination of the 1937 Agricultural Conservation Program contained in Bulletin 101 issued by the Department of Agriculture June 22, 1937, clearly indicates that the funds shall not be used for pre-existing indebtedness. The respondents as owners by virtue of the equity of redemption period were entitled under this federal program to the government funds issued in furtherance of rebuilding the land by permitting a certain percentage thereof to remain idle. I do not believe that such payments can be regarded as rents and profits arising out of the land covered by the order of the court appointing the receiver. The record is quite silent as to what acts or performances the appellants

performed to entitle them to receive this government payment for the purpose of letting the land lay idle. The reason advanced in the opinion for permitting the appellant to recover for the purchase of seed with which to sow and plant the land can in no event apply to permitting the appellant to take over government payments for letting the land lay idle or even for the purpose of restricting production for soil building. See Burns v. Clarksdale Production Credit Ass'n., Miss., 195 So. 588; Friona State Bank v. Eaves, Tex. Civ. App., 117 S. W.2d 818.

As the record now stands it is inconceivable to me that the appellants have shown any authority whatsoever that they are entitled to appropriate the government soil building funds. The trial court should be sustained in its order and judgment requiring the appellant receiver to pay over unto the respondents the soil conservation payments.