# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 38

Jared Peterka,

Plaintiff and Appellant

v.

John E. Janda and Irene C. Janda, individually
and as Co-Trustees of the John E. Janda and Irene
C. Janda Living Trust, established October 30,
2018; Jacqueline Korczak, individually, and as
co-guardian and co-conservator of John and Irene
Janda, as Successor Trustee of the John E. Janda
and Irene C. Janda, established October 30, 2018;
Loretta Grad, individually, and as co-guardian
and co-conservator of John and Irene Janda,

Defendants and Appellees

and

Catherine Enstad,

Defendant

## No. 20240122

Appeal from the District Court of Traill County, East Central Judicial District,
the Honorable Steven E. McCullough, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Andrew D. Cook, West Fargo, N.D., for plaintiff and appellant.

Matthew D. Kirschenmann (argued) and Michael T. Andrews (on brief), Fargo,
N.D., for defendants and appellees.

**Peterka v. Janda**
**No. 20240122**

**Tufte, Justice.**

[¶1]   Jared Peterka appeals from a district court judgment denying his claim for declaratory judgment and dismissing his complaint. On appeal, he argues the district court clearly erred by determining his option contract was voidable under N.D.C.C. § 14-01-02. We affirm the judgment.

I

[¶2]   John and Irene Janda (collectively "the Jandas") owned farmland in Walsh County, North Dakota, namely Section 19-156-53 ("the disputed property"). Jacqueline Korczak, Loretta Grad, and Catherine Enstad (collectively "the Defendants") are the adult daughters of the Jandas. Jared Peterka was a neighbor and tenant of the Jandas.

[¶3]   Jared Peterka's father leased the disputed property for many years. In 2012, Jared Peterka assumed the lease and began farming the land. The lease was renewed every three years, and in 2019 a right of first refusal for Jared Peterka to purchase the land was added to the lease. In October 2018, the Jandas established a living trust and conveyed the disputed property into the trust. The Defendants are the residuary beneficiaries of the trust.

[¶4]   On May 20, 2021, Irene Janda was admitted into a nursing home to recover from a broken hip. On May 25, 2021, John Janda was admitted into the same nursing home because "he was unable to care for himself safely without assistance." On June 14, 2021, the Jandas and Peterka executed an option to purchase the disputed property. On July 15, 2021, guardianship and conservatorship proceedings were commenced on behalf of the Jandas. On October 14, 2021, the Jandas were found to be incapacitated, and permanent guardianships were ordered under N.D.C.C. ch. 30.1-28. Two of the Defendants were appointed guardians. The guardians rescinded the option to purchase the disputed property.

1

[¶5]  Jared Peterka filed a complaint for declaratory judgment seeking declaration that his option to purchase the disputed property is valid and enforceable. The Defendants answered and filed a counterclaim, arguing the option to purchase was the result of undue influence exerted by Peterka upon the Jandas and the Jandas lacked capacity to execute the option in June of 2021. A four-day bench trial was held in July 2023.

[¶6]  Following trial, the district court entered a memorandum opinion and order finding the option to purchase was facially valid, not the product of undue influence, and not void for lack of capacity. The court further found the option to purchase was voidable under N.D.C.C. § 14-01-02, and the option was voided when the Defendants rescinded the option to purchase. The court denied Peterka's request for declaratory judgment and dismissed his complaint. Judgment was entered. Peterka appeals.

II

[¶7]  Peterka argues the district court's findings on capacity are clearly erroneous because they are induced by an erroneous view of the law. He argues the court's finding that the Jandas had capacity to enter into the option to purchase precludes a finding that the Jandas were of unsound mind, but not entirely without understanding under N.D.C.C. § 14-01-02. He argues the capacity to enter into a contract is the same capacity contemplated in N.D.C.C. § 14-01-02.

[¶8]  "A district court's finding on capacity, or lack of capacity, is a question of fact." *Vig v. Swenson*, 2017 ND 285, ¶ 14, 904 N.W.2d 489; *see also Slorby v. Johnson*, 530 N.W.2d 307, 310 (N.D. 1995) ("findings concerning capacity and competency are questions of fact which will not be overturned on appeal unless they are clearly erroneous under N.D.R.Civ.P. 52(a)"). "We will not set aside a district court's finding of fact unless it is clearly erroneous." *Vig*, ¶ 14 (citing N.D.R.Civ.P. 52(a)). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made." *Id.*

2

[¶9] "Appellate courts review the record and findings as a whole and if the controlling findings are supported by the evidence, they will be upheld on appeal notwithstanding immaterial misstatements in the lower court's decision." *Pomarleau v. Pomarleau*, 2022 ND 16, ¶ 24, 969 N.W.2d 430 (citations omitted). Furthermore, "[w]e will not set aside a district court's decision simply because the court applied an incorrect reason, if the result is the same under the correct law and reasoning." *Sholy v. Cass Cnty. Comm'n*, 2022 ND 164, ¶ 14, 980 N.W.2d 49 (citations omitted).

III

[¶10] Peterka argues the district court's finding that the Jandas had capacity to enter into the option to purchase precludes a finding that the Jandas were of unsound mind, but not entirely without understanding under N.D.C.C. § 14-01-02. We disagree, and conclude a finding that a contract was not void for lack of capacity to enter into a contract does not preclude a finding the contract was voidable under N.D.C.C. § 14-01-02. We agree certain passages in the district court's order create confusion. However, we conclude the district court's findings are not based on an erroneous view of the law, and the court's findings under N.D.C.C. § 14-01-02 are supported by the evidence.

[¶11] The district court found the option to purchase was not void for lack of "contractual capacity" or the capacity to enter into a contract. Peterka does not dispute this finding. The court then analyzed the Jandas' capacity under N.D.C.C. ch. 14-01 and found the Jandas lacked "guardianship capacity" under N.D.C.C. § 14-01-02, rendering the option to purchase "voidable." The court explained:

> Section 14-01-02 also provides guidance for situations like the present, when a contract is executed by a proposed ward shortly before a guardianship is ordered. In this sense, the phrase "was not entirely without understanding" as used in this statute is the same as "having a general understanding of the nature and effect of the transaction" under the three-prong test for "contract capacity." Thus, even when a person has the limited "contract capacity" under the three-prong test set forth above . . . , if that person actually lacked "guardianship capacity" (even though not yet judicially

3

determined) the person (by and through his guardian) could rescind a contract after a guardianship is put in place. In other words, the contract is voidable in favor of the person who "was not entirely without understanding," (or had the three-prong cont[r]act capacity) by the person's later guardian.

The court also explained "for purposes of interpretation of these statutes, 'a person entirely without understanding' equals 'a person of unsound mind' equals a person whose 'incapacity has been judicially determined' equals a person whose contracts are null and void."

A

[¶12] The district court's reasoning attempts to reconcile capacity to enter into a contract with a separate and distinct remedy at law for a conveyance or other contract made by a person adjudicated incapacitated upon application for the appointment of a guardian after the contract had been made. Specifically, the court's explanation that "'a person entirely without understanding' equals 'a person of unsound mind' equals a person whose 'incapacity has been judicially determined' equals a person whose contracts are null and void" misstates the law by conflating separate remedies at law. If we examine the separate remedies at law and view the district court's findings from this perspective, then we see the misstatements are immaterial to the controlling findings. *See Pomarleau*, 2022 ND 16, ¶¶ 24–25 (explaining that when the district court's findings are not perfect, immaterial misstatements should be viewed in light of the record and findings as a whole). To untangle the district court's explanation, we must examine these separate remedies at law.

[¶13] First, each party must have the capacity to enter into a contract. If either party lacks the capacity to contract, then the contract is void. "Generally, a contract requires parties capable of contracting, consent of the parties, a lawful object, and sufficient consideration." *Fettig v. Est. of Fettig*, 2019 ND 261, ¶ 11, 934 N.W.2d 547 (citing N.D.C.C. § 9-01-02) (cleaned up). "'Parties capable of contracting' refers to the contractual capacity of the parties." *Id.* "All persons are capable of contracting except minors and persons of unsound mind." N.D.C.C.

§ 9-02-01. "Minors and persons of unsound mind have only such capacity as is specified in statutes relating to such persons." N.D.C.C. § 9-02-02.

[¶14] The applicable standard requires "the party attacking the validity of the transaction . . . to prove the grantor, at the time of the transaction, was so weak mentally as not to be able to comprehend and understand the nature and effect of the transaction." *Vig*, 2017 ND 285, ¶ 12; *see also Slorby*, 530 N.W.2d at 310. The district court relied on the standard outlined in *Slorby* to determine whether the Jandas lacked capacity to enter into a contract. The standard provides:

> [B]efore a court may set aside a conveyance on the ground of mental incompetency of the grantor, the party attacking the validity of the deed must show that the grantor, at the time of the execution of the instrument, was so weak mentally as not to be able to comprehend and understand the nature and effect of the transaction involved.

*Slorby*, 530 N.W.2d at 310 (citing *Runge v. Moore*, 196 N.W.2d 87, 103 (N.D. 1972); *Hendricks v. Porter*, 110 N.W.2d 421, 428 (N.D. 1961); *Nordby v. Sagen*, 64 N.D. 376, 252 N.W. 383, Syllabus (1934)); *see also Vig*, 2017 ND 285, ¶ 12 (citing *Estate of Wenzel-Mosset v. Nickels*, 1998 ND 16, ¶ 13, 575 N.W.2d 425; *Matter of Estate of Nelson*, 553 N.W.2d 771, 773 (N.D. 1996); *Runge*, 196 N.W.2d at 102-03; *Lee v. Lee*, 70 N.D. 79, 84, 292 N.W. 124, 126-27 (1940); *Meyer v. Russell*, 55 N.D. 546, 575, 214 N.W. 857, 869 (1927)). Notably, the court did not apply this same standard to its analysis regarding whether the option to purchase was voidable under N.D.C.C. § 14-01-02.

[¶15] The Defendants argued the Jandas lacked capacity to contract at the time the option to purchase was executed. The district court found the Jandas "were generally aware" of the nature and extent of property involved in the option, aware of all the parties involved and who might be affected by the option, and the effect of the contract. The court found the option to purchase was "not null and void for want of a party capable of contracting under the general standards for lack of 'contractual capacity.'" Peterka does not dispute these findings.

[¶16] The district court next "consider[ed] the effect of provisions of Chapter 14-01[, N.D.C.C.,] on this contract." The court relied on N.D.C.C. § 14-01-02, finding

5

the option to purchase was voidable. "Rescission of a contract on the ground of mental incapacity is authorized by N.D.C.C. § 14-01-02." *Slorby*, 530 N.W.2d at 309. Section 14-01-02, N.D.C.C., governs conveyances and other contracts made by individuals "of unsound mind, but not entirely without understanding," who have been adjudicated incapacitated upon application for the appointment of a guardian. This section makes the remedy of rescission available *only* to persons therein described. *See Volk v. Volk*, 121 N.W.2d 701, 705 (N.D. 1963); *see also* N.D.C.C. § 9-02-02 ("Minors and persons of unsound mind have only such capacity as is specified in statutes relating to such persons.").

[¶17] Chapter 14-01, N.D.C.C., governs the "powers of incompetents." "A person entirely without understanding has no power to make a contract of any kind." N.D.C.C. § 14-01-01. The contract is void. "A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before the person's incapacity has been determined judicially upon application for the appointment of a guardian is subject to rescission as provided by the laws of this state." N.D.C.C. § 14-01-02. The contract is voidable. "After a person's incapacity has been determined judicially upon application for the appointment of a guardian, a person of unsound mind can make no conveyance or other contract, nor delegate any power, nor waive any right until the person's restoration to capacity is determined judicially." N.D.C.C. § 14-01-03. The incapacity determination continues until a court declares otherwise.

[¶18] Under Chapter 14-01, N.D.C.C., a person of unsound mind may or may not be entirely without understanding. Under the plain language of the statute, it is clear that a person "entirely without understanding" may differ from a person of "unsound mind." *See* N.D.C.C. § 14-01-02 ("a person of unsound mind, but not entirely without understanding"). The term "person of unsound mind" refers to a set of people, which includes a subset of persons "entirely without understanding." *See* N.D.C.C. §§ 14-01-01 and 14-01-02. A person may be both "of unsound mind" *and* "entirely without understanding." *See* N.D.C.C. § 14-01-01. But a person may also be "of unsound mind" *and not* entirely without understanding. *See* N.D.C.C. § 14-01-02. Section 14-01-02, N.D.C.C., applies only to the subset of persons of unsound mind who are not entirely without

understanding. If a person is entirely without understanding, the conveyance or other contract is void under N.D.C.C. § 14-01-01.

[¶19] Other states have examined the words contained in N.D.C.C. §§ 14-01-01 and 14-01-02, explaining the distinction between a contract or conveyance that is void and one that is voidable. *See, e.g.*, *Fleming v. Consol. Motor Sales Co.*, 74 Mont. 245, 240 P. 376, 381 (1925); *Jacks v. Estee*, 139 Cal. 507, 73 P. 247 (1903). Under N.D.C.C. § 14-01-01, "[a] person entirely without understanding has no power to make a contract of any kind." Analyzing this same language, Montana and California courts have explained:

> [O]bviously, the term "understanding" is used to denote not the act of understanding, but the capacity or faculty of doing so; and the expression "without understanding" is to be understood as referring to persons without such capacity. Nor is the expression to be understood in its literal and extreme sense—for hardly in any case can even the most insane person be said to be without some degree of understanding (1 Wharton on Contracts, § 98); but rather it is to be understood as restricted to the subject-matter to which the section relates—which is that of contracts, executed and executory—and hence as applying to all persons who are entirely without the capacity of understanding or comprehending such transactions.

*Fleming*, 74 Mont. 245, 240 P. at 381 (quoting *Jacks*, 139 Cal. at 511, 73 P. at 248). Comparing N.D.C.C. §§ 14-01-01 and 14-01-02, "evince[s] a legislative attempt to avoid conflicting judicial opinion as to when an instrument is utterly void or merely voidable." *Id.*

[¶20] Oklahoma explains the statutory language this way:

> The words "entirely without understanding" . . . have reference to the nature of the contract assailed. In order to render a deed void under this section on the ground of insufficient mental capacity, it must be shown that the grantor not only did not understand the nature of the transaction, but also that he was without sufficient mental capacity to understand it. While this particular section was not mentioned, we think the rule announced in *Miller v. Folsom*, 49 Okl. 74, 149 Pac. 1185, announces the just and correct rule to be applied in determining the competency of a grantor to execute

7

a deed. It was there held that the test to be applied in such circumstances is that the grantor shall have the ability to understand the nature and effect of the act in which he is engaged and the business he is transacting, and that in order to invalidate the deed it must be shown that the grantor was incapable of comprehending that the effect of the deed when made, executed, and delivered would be to divest him of the title to the land set forth in the deed.

*Sooner Fed. Sav. & Loan Ass'n v. Smoot*, 1987 OK 7, ¶ 14, 735 P.2d 555, 558-59.

[¶21] It follows that if, at the time they executed the option contract, the Jandas were "entirely without understanding," their acts were void under N.D.C.C. § 14-01-01. *Id.* Proof that they were of unsound mind would not be sufficient to void the option contract under N.D.C.C. § 14-01-01. *See id.* However, N.D.C.C. § 14-01-02, "declares under what circumstances a contract of a person of unsound mind, but not entirely without understanding, may be rescinded." *Fleming*, 74 Mont. 245, 240 P. at 381.

[¶22] The standard for determining whether the option to purchase was void under N.D.C.C. § 14-01-01, as articulated by other states' courts, is very similar to our standard for determining whether a contract is void for lack of capacity to enter into a contract. *Compare Smoot*, 1987 OK 7, ¶ 14 ("the grantor shall have the ability to understand the nature and effect of the act in which he is engaged and the business he is transacting, and that in order to invalidate the deed it must be shown that the grantor was incapable of comprehending [ ] the effect of the deed when made, executed, and delivered"); *with Vig*, 2017 ND 285, ¶ 12 ("the grantor, at the time of the transaction, was so weak mentally as not to be able to comprehend and understand the nature and effect of the transaction"). However, the standard to determine whether the option to purchase was voidable under N.D.C.C. § 14-01-02 differs from the standard in assessing whether a contract is void at its inception. Therefore, the district court's findings that the Jandas lacked capacity to enter into the option to purchase does not automatically preclude a finding that the Jandas were of unsound mind, rendering the option to purchase voidable under N.D.C.C. § 14-01-02.

8

[¶23] The district court's confusion is understandable owing to our case law purporting to adopt the same standard for capacity to enter into a contract as the standard rendering a contract voidable under N.D.C.C. § 14-01-02. In *Slorby*, we examined N.D.C.C. § 14-01-02 and erroneously adopted the same standard we articulated as the capacity to enter into a contract "for determining incapacity under [14-01-02]" by quoting a "long line of authority." *Slorby*, 530 N.W.2d at 309 (citing *Lee*, 70 N.D. 79, 292 N.W. at 126 (examining capacity to enter into a contract); *Meyer*, 55 N.D. 546, 214 N.W. at 869 (examining capacity to execute a deed); *Johnson v. Johnson*, 85 N.W.2d 211, 224–225 (N.D. 1957) (examining capacity to execute a deed)). In 1940, the *Lee* Court compiled cases, which we have since repeated as the "test of capacity" at the time of the transaction. 70 N.D. 79, 84, 292 N.W. at 126; *see Johnson*, 85 N.W.2d at 220 (quoting *Lee's* "test of capacity" laid down several times and concluding "we are satisfied that he was of such a mind and memory at the time of the execution of the deed, that he understood and comprehended the meaning and effect thereof, and was able to, and did exercise his will in executing the deed"); *Hendricks v. Porter*, 110 N.W.2d 421, 428 (N.D. 1961) (quoting *Lee's* "test of capacity" laid down several times to examine capacity to execute a deed); *Runge*, 196 N.W.2d at 103 (quoting *Lee's* "test of capacity" laid down several times to examine capacity to execute a deed); *Vig*, 2017 ND 285, ¶ 13 (citing *Runge* quoting *Lee's* "test of capacity" laid down several times to examine capacity to execute a deed); *but see Slorby*, 530 N.W.2d at 310 (apply *Lee's* "test of capacity" laid down several times to determine whether a deed is voidable under N.D.C.C. § 14-01-02). Our misstatement in *Slorby* highlights the confusion in the district court's analysis, which requires clarification here.

[¶24] *Slorby* was a deviation from our clear distinction between the two standards for separate remedies at law. In *Runge*, 196 N.W.2d at 97, this Court examined "whether the mineral deed is voidable because of the unsoundness of mind, as defined in Section 14-01-02, N.D.C.C., at the time of the transaction in question." The *Runge* court explained, under N.D.C.C. § 14-01-02, the district court would be required to find "[Annie Bell] was of 'unsound mind, but not entirely without understanding'" at the time of the transaction in question in order to set aside the deed. *Id.* at 102. The Court concluded evidence was not

9

presented to support a finding that Bell was of unsound mind but not entirely without understanding. *Id.* However, the Court went on to explain that "all of the witnesses present at the time of the transaction . . . testified that, in their opinion, Annie M. Bell was competent and did understand the transaction at the time the mineral deed was executed and delivered." *Id.* The Court quoted *Lee*'s "test of capacity . . . laid down by this court several times" and then concluded Bell "understood and comprehended the meaning and effect [of the deed] and was able to and did exercise her will in executing the mineral deed in question." *Id.* at 103. The *Runge* Court correctly applied *Lee's* "test of capacity" laid down several times to determine whether Bell lacked capacity to execute the deed in question.

[¶25] In *Slorby*, the underlying action was a rescission action commenced by a conservator. The remedy at law was rescission. The district court found: "Melvin Steffens was a person of unsound mind and suffered a mental deficiency caused by advanced age or other cause or causes. This condition was such that Mr. Steffens lacked sufficient understanding and capacity to make responsible decisions regarding his property." The court explained: "Melvin Steffens was not able to enter into a Contract for Deed concerning the property since his mind and memory were of a condition which rendered him incompetent to judge his rights and interests in relation to the transaction." *Slorby*, 530 N.W.2d at 309. This is the correct application of the standard and appropriate supporting findings for rescission under N.D.C.C. § 14-01-02. *See Runge*, 196 N.W.2d at 102 (court must find the person of unsound mind but not entirely without understanding); N.D.C.C. § 30.1-26-01(2) ("incapacitated person" under the probate code refers to a person who "lacks capacity to make or communicate responsible decisions concerning that person's . . . legal affairs").

[¶26] However, in *Slorby*, this Court adopted *Lee's* test of capacity, which analyzes the capacity to enter into a contract, and declared the same standard applies to N.D.C.C. § 14-01-02. This was an error. The *Slorby* Court ultimately analyzed the evidence and concluded: "On this record, we conclude that the trial court's finding that Steffens lacked the mental capacity to enter into the . . . contract for deed is not clearly erroneous." The *Slorby* Court articulated the erroneous standard to examine whether the deed was voidable under N.D.C.C.

§ 14-01-02, but ultimately determined the deed was void because Steffens lacked the capacity to enter into the contract for deed, without distinguishing the two separate remedies at law.

[¶27] In contrast, the *Runge* Court specifically applied *Lee's* "test of capacity" laid down several times to determine whether Bell lacked capacity to execute the deed in question after concluding the record did not support a finding that Bell was of unsound mind but not entirely without understanding under N.D.C.C. § 14-01-02. In *Vig*, this Court specifically rejected the Estate's claim that commencement of guardianship proceedings around the time frame of execution of the quit claim deed would "compel a finding that Junietta Swenson lacked capacity to execute the quit claim deed." 2017 ND 285, ¶ 15. The two standards are separate and distinct.

[¶28] To the extent *Slorby* purports to adopt the same standard to determine whether an individual lacks capacity to enter into a contract as to examine whether a contract or other conveyance is voidable under N.D.C.C. § 14-01-02, we clarify here that the standards are distinct. While the standard to determine whether a contract is void for lack of capacity to enter into a contract is very similar to the capacity rendering a contract void under N.D.C.C. § 14-01-01, we have explained that section 14-01-01 differs from 14-01-02. Section 14-01-02, N.D.C.C., requires a finding of an "unsound mind."

[¶29] The district court did not materially misstate the law. Nor did any misstatement result in an erroneous application of the law in making the court's findings. We therefore review whether the district court's findings are supported by the evidence.

B

[¶30] Under N.D.C.C. § 14-01-02, the option to purchase is a contract made before the Jandas' incapacity was determined judicially upon application for the appointment of a guardian. Three months after the execution of the option to purchase, the district court judicially determined the Jandas were incapacitated in guardianship proceedings under N.D.C.C. ch. 30.1-28. The petitions for guardianship were filed only one day after the execution of the option to

11

purchase. Therefore, section 14-01-02, N.D.C.C., applies, and the option contract is subject to rescission if the court finds the Jandas were "of unsound mind."

[¶31] Chapter 14-01, N.D.C.C., does not define "unsound mind." The North Dakota Century Code uses the term "unsound mind" when describing "capacity" or "competency" in the areas of contract law, marriage, civil liabilities, and disabilities and guardianships of individuals, including criminal defendants. *See, e.g.,* N.D.C.C. §§ 9-02-02, 14-01-02, 14-04-01, 14-10-03, 28-03-04, 28-03-06, 32-03-08. Examining the marriage statutes, we have explained, "there has been a hesitancy on the part of the courts to judicially define the phrase 'unsound mind.'" *Johnson v. Johnson*, 104 N.W.2d 8, 13-14 (N.D. 1960) (explaining "[e]xamination of authorities discloses that there is no precise definition of the term 'unsound mind', as employed by Section 14-0401, [NDRC 1943], and the difficulty of formulating a comprehensive definition long has been recognized"). In the context of civil remedies and commencing lawsuits, we examined the statutory term "insane" under N.D.C.C. ch. 28-01 and explained California's definition of "insane," which is interchangeable with the term "mentally incompetent," that "a person having an *unsound mind* or having a mental condition rendering that person incapable of comprehending legal rights" is a useful and accurate definition. *BASF Corp. v. Symington*, 512 N.W.2d 692, 695 n.2 (N.D. 1994) (emphasis added).

[¶32] Section 14-01-03, N.D.C.C., describes a person who has been judicially determined to be incapacitated by guardianship proceedings as "a person of unsound mind." *See also In re Guardianship of Frank*, 137 N.W.2d 218, 221 (N.D. 1965) (emphasis added) (quoting *Goetz v. Gunsch*, 80 N.W.2d 548, 552 (N.D. 1956)) ("Section 30-10-02, N.D.C.C., vests in the county court power to appoint a guardian of the person or estate, or both, where the jurisdictional facts exist and the person 'is of *unsound mind*, or from any cause mentally or otherwise incompetent to manage his own property.'"). Under the Uniform Probate Code, "incapacitated person" means:

> [A]ny adult person who is impaired by reason of mental illness, mental deficiency, physical illness or disability . . . to the extent that the person lacks capacity to make or communicate responsible

decisions concerning that person's matters of residence, education, medical treatment, legal affairs, vocation, finance, or other matters, or which incapacity endangers the person's health or safety.

N.D.C.C. § 30.1-26-01(2).

[¶33] A four-day bench trial was held on this matter. "The Court heard considerable evidence concerning the Jandas' mental state, both from lay people and from experts." The court "heard from two different attorneys who represented the Jandas, at or about this time" and from three separate medical or psychological professionals. Both parties presented expert testimony, and the court-appointed expert in the Jandas' guardianship proceedings also testified. The court further reviewed two recordings of the Jandas from June 14 and June 16, 2021. The court reviewed the expert and visitor reports from the guardianship proceedings as well as the transcript from the hearing on the guardianship proceedings. The court also reviewed the Jandas' medical records beginning in October 2019.

[¶34] On the basis of the record, the district court found:

> Both of the Jandas were of advanced age in 2021. Both were, as found by the Court in the guardianship proceedings, suffering from degenerative mental conditions (John from "dementia" and Irene from "Alzheimer's dementia.") In May of 2021, Irene had fallen and broken her hip. By June 14, 2021, both John and Irene had moved out of their home and into the Hatton Prairie Valley nursing home. Even before that date, their medical records indicate mental failings.
>
> For example, after a medical appointment on February 21, 2021, John's doctor indicated he had a "history of . . . progressive memory loss." On a Hatton Prairie Village Bowel Assessment Form for John dated May 25, 2021, there is indicated a diagnosis of "dementia." John's records at Hatton Prairie Village indicate a diagnosis of "dementia" on June 23, 2021. On his Hatton Valley Prairie Care Plan there is a note from June 2, 2021, which states: "John has a memory/recall problem, decision making problems" and a notation of "dementia." On June 11, 2021, there is an indication in the Hatton Prairie Village Long Term Record that John at times "did not recall previous conversations."

13

Irene's medical records contain similar instances which show mental failings significantly before October 14, 2021. For example, on her Hatton Valley Prairie Care Plan, there is a note on June 1, 2021, which states: "Irene has a memory recall problem" and a notation of "dementia." In a Long Term Record from Hatton Prairie Valley dated June 13, 2021, it outlines the following exchange: "'We've been here 2 wks and our kids haven't been here to visit.' Reminded that they had been here by CNA and she replied 'Don't tell my daughter I'm confused.'" On June 14, 2021, the date the Option was signed, an Occupational Therapy note states that Irene "demonstrates increased confusion this date in telling therapist a story, repeating self excessively." Similarly, on June 15, 2021, the Long Term Record reports: "PT & OT both report that she is more confused today. She asked them both several times who they were and did not retain that information."

(Internal record citations omitted.)

[¶35] The district court weighed the competing experts' opinions and found "the Plaintiff's expert's opinion less credible and less convincing than that of the other experts." The district court found "from the totality of the evidence presented, that on June 14, 2021, when the Option was executed, a guardianship would have been warranted for both the Jandas and that they lacked 'guardianship capacity.' Thus, even though the Jandas exhibited 'contract capacity' at that time (or, in the language of the Section 14-01-02, 'were not entirely without understanding'), the Option was voidable and subject to rescission." The district court previously explained by its own definitions, "a person who has been adjudicated as incapacitated in a guardianship proceeding is a person of unsound mind, or in other words, a person who lacks 'guardianship capacity.'" Therefore, the district court found the Jandas were of unsound mind but not entirely without understanding under N.D.C.C. § 14-01-02, rendering the option contract voidable. The district court's findings are supported by the record.

[¶36] "We do not reweigh evidence or reassess credibility, nor do we reexamine findings of fact made upon conflicting testimony. We give due regard to the trial court's opportunity to assess the credibility of the witnesses, and the court's choice between two permissible views of the evidence is not clearly erroneous."

14

*Vig*, 2017 ND 285, ¶ 14 (cleaned up). Having reviewed the record and findings as a whole, we conclude the controlling findings are supported by the evidence and the findings are not based on an erroneous view of the law. Nor are we left with a definite and firm conviction a mistake has been made. The district court's findings are not clearly erroneous.

## IV

[¶37] We have considered the parties' remaining arguments and conclude they are either unnecessary to our decision or without merit. We affirm the district court judgment.

[¶38] Jon J. Jensen, C.J.
     Daniel J. Crothers
     Lisa Fair McEvers
     Jerod E. Tufte
     Douglas A. Bahr